Argued May 24; affirmed July 2, 1940

# HOWARD *v.* HOWARD

(103 P. (2d) 756)

Department 1.

*Earl F. Bernard,* of Portland (Collier, Collier & Bernard, of Portland, on the brief), for appellant.

*Lamar Tooze,* of Portland (Cake, Jaureguy & Tooze, of Portland, on the brief), for respondent.

ROSSMAN, J. This is an appeal by the plaintiff from that part of a decree of the circuit court which orders the defendant to pay to the plaintiff $250 per month for the maintenance of herself and the two children born of the marriage. Other parts of the decree dissolved the bonds of matrimony then existing between the parties, awarded to the plaintiff the custody of the two children, and required the defendant to pay a balance of $750 upon an attorney fee of $1,750 awarded to the plaintiff. The part of the decree mentioned above and attacked by the appeal is followed by a provision which we shall now quote:

"* * * this amount being premised on the defendant's representation that he will convey to the plaintiff his undivided one-half (½) interest in the home property, and transfer to her all the furniture and household goods, and any interest he may have in the automobile now in her possession, and this amount not contemplating any unusual expenses to which the plaintiff may be put, such as doctors' bills in excess of Fifty and 00/100 Dollars ($50.00) in any one year, or dental bills; and it is further

"Ordered, Adjudged and Decreed, that the defendant deposit with some bank or trust company, to be agreed upon between the parties or approved by the Court, securities or cash of the present market value of Twelve Thousand and 00/100 Dollars ($12,000.00),

for the purpose of securing compliance with this decree * * *."

The plaintiff contends that "the court should have granted appellant a lump sum award equal to one-half of the respondent's estate, and a monthly allowance for the education and care of the children." She argues that "where husband and wife, suing each other for divorce for cruel and inhuman treatment, are in middle life, and have both worked hard to accumulate their property, the wife, if granted a divorce, should be awarded alimony in lump sum rather than in monthly installments." She cites *Wilhelm v. Wilhelm*, 126 Or. 388, 270 P. 516; *McCallister v. McCallister*, 113 Or. 124, 229 P. 687; *Costello v. Costello*, 120 Or. 439, 251 P. 303.

The plaintiff and the defendant were married December 5, 1925. The defendant was then the owner of a creamery and dairy lunch business located in Portland. The plaintiff, up to that time, had been a laboratory technician and physician's assistant. A week after the marriage she began assisting the defendant in his place of business. She waited upon the customers, trained the help and discharged other duties. She received no wages. In June, 1928, she temporarily discontinued her work in anticipation of the birth of a child. October 25, 1928, the child was born. In January, 1929, the plaintiff returned to the creamery and dairy lunch and worked as before. After several weeks she discontinued her labors for ten days. When she resumed her work she limited her hours to the period 11:00 A. M. to 6:30 P. M. In August, 1930, she again discontinued her work in anticipation of the birth of a child. It was born in January, 1931, the second of the two children. In the following spring the plaintiff re-

turned to the store, working from 11:00 in the morning to 2:00 in the afternoon. This continued until 1935. Thereafter she confined herself to her home. In 1933 the defendant desired to increase the items available at his lunch counter, but not being sure whether a kitchen would be profitable, the plaintiff cooked food in their home for service in the lunch counter. This work was discontinued in 1935. In the plaintiff's brief the importance of these facts is emphasized.

The complaint alleges that "the sum of Two Hundred Fifty Dollars ($250) is the reasonable and necessary amount to be paid by the defendant to the plaintiff for the support of this plaintiff and for the support, maintenance and education of the minor children of plaintiff and defendant, and for the general upkeep of the home during the pendency of this suit." The prayer asks for a decree (1) dissolving the marriage contract; (2) granting to the plaintiff the control of the two children; (3) directing the defendant to pay to the plaintiff support money in the sum of $250 per month during the pendency of the suit; (4) requiring the defendant to pay to the plaintiff $50 court costs and $1,000 attorney fee; and concludes with the following: "Upon the hearing of this cause, the court fix such sum to be allowed to this plaintiff as lump sum alimony, together with the sum of Two Hundred Fifty Dollars ($250) permanent alimony for the support of the plaintiff and for the care, support, maintenance and education of the minor children of plaintiff and defendant." The only part of the decree which is attacked by this appeal is the part which omits to award lump sum alimony in addition to installment alimony.

We shall now review the parties' financial condition. In 1926 the plaintiff and the defendant purchased a

home, taking title in their joint names as an estate by the entirety. The amount paid for the property was $9,000. After the purchase a lawn was developed, a sprinkler system added, a room and plumbing were added in the basement, an oil burner and other conveniences were installed. In 1937 the defendant, at an expense of $5,000 repaired and reconditioned the house. He swore that the furnishings of their home were worth several thousands of dollars, explaining that they included a grand piano, refrigerator, electric range, a new radio, etc. He deemed the home, exclusive of its furnishings, worth $10,000. The plaintiff expressed the belief that it was worth $5,500, but admitted that before the repairs and reconditioning of 1937 had been undertaken an offer of $6,500 for the property was declined. The complaint swears that ''said home and contents are of a reasonable value of Seventy-five Hundred Dollars.'' For the plaintiff's sole convenience the defendant, in 1938, purchased an automobile at a price of $1,600. He possessed another which served his needs. In 1926 the defendant began the accumulation of life insurance upon his life. At the time of the trial it totaled $70,000. The plaintiff is the beneficiary in all of the policies. The premiums aggregate $2,500 per year.

During the period described in the preceding paragraphs the defendant's business increased in volume. This business was carried upon his books as worth $22,000. Besides this business the defendant had at the time of the trial $27,000 in cash, but owed bills approximating $8,000. He possessed securities lodged with a firm of brokers of the market value of $13,825. Sums which he owed to the brokers and the estimated brokerage, in the event of a resale, reduced these securities'

net value to $10,791. He owned other securities of which he had possession of the market value of $4,000. Assuming the above figures to represent true values, he was worth approximately $55,000, exclusive of his home, its furnishings and the automobile which he had purchased for the plaintiff. He swore that his net income for 1937 was $9,000, and that for 1938 it was $8,000, exclusive of his salary of $3,000. His income tax returns to the federal government indicated that in 1937 and 1938, respectively, his income was $13,838.85 and $12,774.87. The state returns for the same years were $12,803.75 and $12,646.71, respectively. He claimed, and recited facts in support of the claim, that all of this income was not available for his personal use owing to the fact that it is constantly necessary to purchase new equipment for the business and that in five-year cycles extensive alterations are required. Most of his income in the two years which we have mentioned was derived from his creamery and dairy lunch business. However, in 1938 he received dividends from securities aggregating $663; interest upon bank deposits and investments aggregating $236; and profits made on sale of securities of $105. In 1937 his dividends amounted to $1,533 and interest on bonds yielded him $409.50. The defendant swore that his income for these two years was higher than for any others, declaring that during the depression his net income was $5,000.

The plaintiff argues that since the defendant's business produces a very substantial income it must be worth more than $22,000. But if the defendant's books undervalue the business, that fact should have been proved by evidence. We do not know what equipment is in the place of business, the condition of the lease, etc. A flattering return has misled many an investor

to buy a business place only to discover later that all is not gold that glitters.

We shall now review the evidence that indicates the family expenses. The plaintiff described the defendant as ''very generous and considerate.'' Her brother said that the defendant ''is a very generous man, always has been.'' We believe that fact can properly be borne in mind when we consider the household expenses which the plaintiff described and for which she contends provision should be made in the decree attacked by this appeal. She swore that in order to maintain the house and its occupants in the manner to which the defendant had accustomed them ''probably could be arranged on $250 unless we have something extraordinary,'' adding, ''We never had any terrible doctor bills or anything like that.'' She said that the defendant had monthly given her $200 for the purposes just indicated, and that he had in addition supplied the family monthly with $20 worth of merchandise from his business establishment; he had also paid for the taxes, repairs, etc., himself. In the year preceding the trial the plaintiff's mother became a member of the household. She has borne none of its expenses. For approximately nine months of that period the defendant did not live at home. Apparently his monthly remittance of $200 has been sufficient to defray the household expenses. In addition to the regular expenses the plaintiff paid out of this remittance the charges made by some detectives in her employ who shadowed the defendant. These expenses apparently approximated $300 or more. After the plaintiff was questioned extensively concerning the items that entered into the household maintenance expense, she consulted her records and then expressed the belief that, including insurance, taxes and

estimates of the cost of periodical painting and repairing of the house and depreciation of her automobile, $277 per month was the needed sum. Included in that estimate were wages for a maid who does cleaning, another who performs other household duties, and a man who from time to time cleans the windows.

Upon this appeal the plaintiff does not claim that the allowance made by the circuit court of $250 per month as support money is inadequate, especially not as augmented by the further provision which contemplates additional allowances in the event of extraordinary expenses. But the plaintiff now contends that, instead of awarding alimony in installments, the decree should have granted it in a lump sum. The governing sections of our laws are the following which we have taken from Oregon Code 1930:

"§ 6-912. Whenever a marriage shall be declared void or dissolved, the party at whose prayer such decree shall be made shall in all cases be entitled to the undivided third part in his or her individual right in fee of the whole of the real estate owned by the other at the time of such decree, in addition to the further decree for maintenance provided for in section 6-914; and it shall be the duty of the court in all such cases to enter a decree in accordance with this provision."

"§ 6-914. Whenever a marriage shall be declared void or dissolved, the court shall have power to further decree as follows: * * *

"2. For the recovery from the party in fault, and not allowed the care and custody of such children, such an amount of money, in gross or in installments, as may be just and proper for such party to contribute toward the nurture and education thereof;

"3. For the recovery from the party in fault such an amount of money, in gross or in installments, as may be just and proper for such party to contribute to the maintenance of the other; * * *"

The plaintiff seems to believe that this proceeding is in the nature of one for an equitable division of the defendant's property. We shall now review the three decisions previously cited upon which she depends. *Wilhelm v. Wilhelm* is nothing more than an instance of an award of alimony in gross. The estate was small. In *McCallister v. McCallister* a divorce had been denied to the plaintiff (wife) in the circuit court, but upon appeal this court held that she was entitled to one. In so holding, our decision said that the circumstances entitled her to "money alimony in gross." *Costello v. Costello* affirmed an award of alimony in gross which the husband had attacked as excessive. There is nothing in those decisions which says that alimony must be awarded in gross, nor that it may be awarded not only in installments but also in gross. None of those three decisions deemed a proceeding of this kind as one for the division of the property of the parties. Plaintiff's brief, in reviewing *McCallister v. McCallister*, notes that in that decision the following is quoted from *Musselman v. Musselman*, 44 Ind. 106:

"Where the divorce has been granted to her on account of the misconduct of the husband, the rule is, that she should not be placed in a worse condition than if she had survived her husband; otherwise the husband would be permitted to take advantage of his own wrong."

Upon reading the Musselman decision, we observe that an Indiana statute provided:

"The decree for alimony to the wife shall be for a sum in gross, and not for annual payments. * * * The court shall make such decree for alimony in all cases contemplated by this act as the circumstances of the case shall render just and proper."

The Indiana court, in disapproving the lower court's decree, said that it "deprived Mrs. Musselman of all interest in his real estate." Such a result is thwarted in this state by § 6-912, Oregon Code 1930, quoted in a preceding paragraph. It should be observed that our laws do not say that the award of alimony must be "for a sum in gross, and not for annual payments," but employs the words "gross" and "installments" in the alternative. The Indiana decision, in saying that the wife "should not be placed in a worse condition than if she had survived her husband," evidently had in mind the wife's dower interest in her husband's real property. In the McCallister case the property which the wrongful husband possessed was almost exclusively real property. Hence, the observation was pertinent. But in the present instance the defendant's estate consists largely of personalty. The plaintiff in the decree of divorce is awarded sole ownership of the real property; that is, of the home. The attacked decree certainly does not place her in a worse condition than she could have been placed by last will and testament.

■ Upon entry of that part of the decree which dissolved the marriage the plaintiff, of course, ceased to be the defendant's wife; that being true, the defendant owed no duty to support her unless a statute imposed that duty upon him. It has been many times pointed out by this court that the power to award permanent alimony is purely statutory. Our latest decision is *State ex rel v. Tolls*, 160 Or. 317, 85 P. (2d) 366, 119 A. L. R. 1370. A good discussion is set forth in 17 Am. Jur., Divorce and Separation, p. 418, § 513, and p. 461, § 586.

■ It will be observed from § 6-914 of our laws quoted in a preceding paragraph that the circuit court

and likewise this court, has no authority to grant to the plaintiff any sum greater than the amount which represents the maintenance of herself and her two children. This may be done either in gross or in installments.

An appellate court ought not interfere with the discretion exercised by the trial judge in determining whether the award should be in gross or in installments unless it is satisfied that the discretion was abused. We observe from the record that the circuit judge who tried this cause paid careful attention to the testimony, asked many of the questions, and had a conference with the parties in his chambers in an endeavor to effect a reconciliation. We know of no fixed rule for the determination of the question of whether gross or installment alimony should be awarded. We assume that the exercise of good business sense is the best means that can be pursued. It will be observed from the plaintiff's contention quoted in the second paragraph of this opinion that she insists there should be allowed her ''a lump sum award equal to one-half of the respondent's estate.'' Unless the defendant underestimated the value of his business, the net worth of his estate, exclusive of the home, is approximately $55,000. One-half of his estate would, therefore, be $27,500. That sum invested at 6 per cent—a high yield in these days of idle money—would produce a monthly return of $137.50, which is $112.50 less than the maintenance money of $250 awarded by the attacked decree. The provisions in the decree whereby the plaintiff receives the home, its furnishings, and an automobile were inserted upon the defendant's voluntary offer. According to the evidence, they appear to be worth $12,000 or more. Thus, it is seen that the plaintiff fares better under the attacked decree than if she had been awarded one-

half of the defendant's net worth. We also pause to observe that the earning power of the estate is under the management of the defendant, who has demonstrated his capacity to make it yield a sufficient amount. To avoid misunderstanding, we add that the statutes quoted in a preceding paragraph do not entitle the plaintiff to lump sum alimony in an adequate amount to assure support for her and the children, plus installment alimony awarded upon a similar basis. We, therefore, conclude that the circuit court did not err when it disallowed the plaintiff's prayer for lump sum alimony and granted in lieu thereof installment alimony.

Since the plaintiff does not criticise the amount that has been awarded, we shall not concern ourselves with the sum.

Believing that the decree is free from error and that its provisions are as they should be, it is affirmed. The disbursements attendant upon this appeal, unless already defrayed by the defendant, should be taxed against him.

RAND, C. J., and KELLY and BELT, JJ., concur.