Argued October 6; modified November 23, 1948

## SIEBERT *v*. SIEBERT
199 P. (2d) 659

*Arthur E. Prag* argued the cause for appellant. On the brief were Hoy and Prag, of Portland.

*L. V. Lundberg,* of Portland, argued the cause and filed a brief for respondent.

Before ROSSMAN, Chief Justice, and BELT, BAILEY, and BRAND, Justices.

BAILEY, J.

This is an appeal by plaintiff Gertrude Siebert from parts of a decree of the Circuit Court for Multnomah County which granted her a divorce from defendant Willi Siebert; awarded her an undivided one-third interest in Lot 7, Block 111, Parkrose, Multnomah County, Oregon; and ordered defendant to pay to the clerk of the court $75 a month for plaintiff's benefit as alimony and the further sum of $175 for her benefit as attorney's fees. It was further decreed that plaintiff and defendant were each the owner of an undivided one-half interest in Lot 9, Block 111, Parkrose, and "in the furniture and furnishings of their home." Plaintiff has appealed from the entire decree except the parts thereof which (1) granted her

a divorce; (2) required defendant to pay to the clerk $175 for her benefit as attorney's fees; and (3) adjudged that plaintiff and defendant were each the owner of an undivided one-half interest in the furniture and furnishings of their home.

Only two assignments of error are set forth in plaintiff's brief. They are based on the alleged errors of the court ''in refusing to grant the plaintiff either lump-sum alimony or to award all the home property to the plaintiff'', and ''in awarding the plaintiff the sum of only $75.00 a month as alimony.''

Plaintiff and defendant were married in Germany in 1921 and shortly thereafter came to Oregon where they have since resided. In 1923 they purchased for $3,000, as tenants by the entirety, Lot 9, Block 111, Parkrose, in Multnomah County, situate a short distance from Portland. This tract of land consists of several acres, but its exact acreage is not disclosed. After purchasing this property, and until the institution of this suit, Mr. and Mrs. Siebert spent all their spare time and much money remodeling the small house thereon—which has not yet been completed—, constructing a garage and workshop, and landscaping the ground. During the trial this property was referred to by a number of witnesses as one of the ''show places of Portland'', and its value was estimated at from $20,000 to $25,000.

At the time of the trial Mr. Siebert was the owner of a part of Lot 7, Block 111, Parkrose, for which he paid $75. The date this tract of land was purchased, the size thereof, its present value, and whether it is improved, are not shown by the evidence.

Mrs. Siebert, during her marriage, earned approximately $10,000 while employed in different industries,

all of which, with the exception of her earnings for a few months prior to the institution of this suit, she turned over to her husband. Mr. Siebert was employed for many years prior to World War II by the Doernbecker Manufacturing Company of Portland, Oregon. For a number of years he received a wage of $27 a week. When he quit Doernbecker's to take employment in a shipyard he was receiving 75 cents an hour, or $30 a week. His pay in the two shipyards in which he worked was, according to his testimony, $1.32 an hour. In August, 1945, he, together with about 45,000 other employees in the shipyards, was discharged and he did not find other employment for several months. For four months in 1945 and two months in 1946 he received unemployment compensation. In 1946 Mr. Siebert was paid $2,985.63 by the Columbia Cabinet & Fixture Corporation. The amount of his earnings in 1947 up to the time of the trial (May 22, 1947) is not shown. For a short period of time he worked at Klamath Falls as a cabinet maker and received $2 an hour for a 40-hour week and double pay for overtime. At the time of the trial he was unemployed. He testified that he probably would receive $1.60 an hour on his next job.

Mrs. Siebert is now past 56 years of age and is in good health. Mr. Siebert is also in good health, but his age is not shown. Only one child, a son, was born as the issue of the marriage. He is approximately 26 years of age. Mr. Siebert testified that all his earnings and the money which he received from his wife were used to pay their living expenses, to improve Lot 9, and to raise and educate their son. We are of the opinion that both Mr. and Mrs. Siebert have been industrious and thrifty, that their earnings were used as stated by Mr. Siebert, and that Mr. Siebert does not own any property of any value other than his interest

in lots 7 and 9, Block 111, Parkrose, and his interest in the furniture and furnishings of their home.

After the institution of this suit, August 7, 1946, and before the entry of the decree herein, September 30, 1947, § 9-912, O. C. L. A., as amended by chapter 407, Oregon Laws 1941, and § 9-914, O. C. L. A., were amended. Section 9-912, as amended in 1941, provided in part as follows:

"Whenever a marriage shall be declared void or dissolved, the party at whose prayer such decree shall be made shall in all cases be entitled to the undivided third part in his or her individual right in fee of the whole of the real estate owned by the other at the time of such decree, in addition to the further decree for maintenance provided for in section 9-914;. * * * and it shall be the duty of the court in all such cases to enter a decree in accordance with this provision."

As amended by the 1947 legislature (Ch. 557, Oregon Laws 1947) that section reads as follows:

"Whenever a marriage shall be dissolved or annulled, the party on whose prayer the decree shall be given and made thereby shall be awarded in his or her individual right such undivided interest in, or in severalty, such part or parts or the whole of, the real property or personal property, or both, or right, interest or estate in either or both thereof, owned by the other at the time of such decree, as may be just and proper in all the circumstances, in addition to the further decree for maintenance provided for in section 9-914."

Section 9-914, *supra,* before the 1947 amendment, was, so far as material here, as follows:

"Whenever a marriage shall be declared void or dissolved, the court shall have power to further decree as follows:
* * *

"(3) For the recovery from the party in fault such an amount of money, in gross or in instalments, as may be just and proper for such party to contribute to the maintenance of the other; * * *"

The only change in the above-quoted portion of § 9-914 made by the 1947 amendment (Ch. 228, Oregon Laws 1947) was the addition of the words "or both" after the phrase "in gross or in instalments".

The 1947 amendments took effect on July 5, 1947, and, since they were in full force when the decree was entered, they would govern the allowance of alimony and the award of property or property rights to the plaintiff, the party on whose prayer the decree of divorce was granted. *Krieg v. Krieg,* 153 Wash. 610, 278 P. 223; *Paulson v. Reinecke,* 181 La. 917, 160 So. 629, 97 A. L. R. 1184.

■ Before the 1947 amendment of § 9-912, *supra,* the court was required to award to the party to whom the decree of divorce was granted an undivided third part in fee of the whole of the real estate owned by the other at the time of such decree. Property held by the husband and wife as tenants by the entirety was, on the termination of the marital relation, converted into a tenancy in common. *Schafer v. Schafer,* 122 Or. 620, 260 P. 206, 59 A. L. R. 707; *Fuller v. Fuller,* 175 Or. 136, 151 P. (2d) 979. Since the amendment of that section the statute does not require the court to award to the party not at fault any part of, or interest in, the real or personal property owned by the other party but does require the court to award to the one to whom the divorce is granted "such undivided interest in, or in severalty, such part or parts or the whole of, the real property or personal property, or both, or right, interest or estate in either or both thereof, owned by the other at

the time of such decree, as may be just and proper in all the circumstances''. Where property is held by the husband and wife as tenants by the entirety the party to whom the divorce is granted becomes the owner of an undivided one-half thereof unaffected by the 1947 amendment. The other undivided one-half, or an interest therein, may be awarded to the party not in fault, if found by the court to ''be just and proper in all the circumstances''. If not affected by the court's award such undivided one-half interest is the property of the one against whom the divorce is granted.

The amendment of § 9-914 by chapter 228, Oregon Laws 1947, was undoubtedly brought about by the uncertainty which had existed as to the right of the court to allow alimony, both in gross and in instalments, to the party not in fault. In *Howard v. Howard,* 164 Or. 689, 103 P. (2d) 756, it was intimated that the allowance for the maintenance of the widow and her two children ''may be done either in gross or in instalments''. However, in *Fuller v. Fuller,* supra, which was decided before the amendment, it was held that alimony might be allowed both in gross and in instalments.

It is contended by the plaintiff that the Circuit Court either should have awarded to her all of Lot 9, which was held by her and her husband as tenants by the entirety, or should have allowed her alimony both in gross and in instalments. Plaintiff argues that she should be allowed $150 in monthly instalments but does not state or intimate how much alimony in gross she thinks she should be allowed.

■ In determining whether alimony should be paid, as well as the amount thereof, courts are vested with a wide range of discretion. This power of determination is neither arbitrary nor uncontrolled. Much

depends upon the particular facts of the individual case. Among the matters to be considered are: The financial condition of the parties; the nature and value of their respective properties; the contribution of each to any property held by them as tenants by the entirety; the duration of the marriage; the husband's income, his earning capacity, his age, health, and ability to labor; and the wife's age, health, station and ability to earn a living. *Fuller v. Fuller,* supra, *Duff v. Duff,* 268 Ky. 343, 104 S. W. (2d) 1095; 17 Am. Jur., Divorce and Separation, § 597, p. 467. The conduct of the parties may enter into the determination of the amount of alimony to be allowed. Where the wife is free from blame, the allowance will be greater than if her conduct was conducive to her husband's fault. *Wilhelm v. Wilhelm,* 126 Or. 388, 270 P. 516; 27 C. J. S., Divorce, § 223 c. (1), p. 957.

In discussing the allowance of alimony in gross or in instalments, it is said in 2 Nelson, Divorce and Annulment, 2nd Ed., § 14.62, at page 71, as follows:

"* * * Where the court has power to award alimony either in gross or by periodic payments, whether the award shall be a lump sum or for periodical payments depends on the circumstances of the particular case. Ordinarily, it is held in some states, alimony should be allowed in a lump sum, if the character of the husband's estate will permit it to be done, unless it is deemed best for both parties that alimony should be ordered paid in instalments, as where the husband has no estate but has an earning capacity. In other states, it is held that it is not advisable, except for special reasons and under special circumstances, to award alimony in a lump sum, and periodical payments are favored under ordinary circumstances. An award of alimony in gross should not be made where unsuitable to meet the necessities of the case."

In a few cases which have reached this court lump sum allowances have been made either by the Circuit Court or by this court. In *Fuller v. Fuller,* supra, the Circuit Court awarded plaintiff the sum of $1,000 alimony in gross and in addition thereto monthly payments of $50 each. In that case it appears that the party against whom the divorce was granted was the owner of 20 acres of land near Pasco, Washington, of the value of approximately $2,400. It was there pointed out that since the court could not "award plaintiff the statutory one-third in fee of the defendant's Washington property, we can see no impropriety in reaching the same result in effect by the award of alimony in gross." This court reduced the amount from $1,000 to $800.

In *Wilhelm v. Wilhelm,* supra, the husband instituted a suit for divorce and his wife counterclaimed asking that a decree of divorce be awarded her. During their married life the parties had acquired by their joint efforts real property as tenants by the entirety on which they had expended approximately $12,000. They also owned stock in several corporations in their joint names. The Circuit Court granted the wife a divorce and awarded her $25 per month alimony, one-half of certain specified personal property, and one-third of plaintiff's undivided one-half of the real property held by them as tenants by the entirety. That decree was entered prior to the decision of this court in *Schafer v. Schafer,* supra. In the Schafer case it was held that upon the marriage being dissolved or annulled the divorced husband and wife became tenants in common of the property owned by them as tenants by the entirety during marriage and that the court had no authority to award to the party not in fault any interest in the

undivided one-half of the other. That holding was followed in the Wilhelm case and the decree appealed from accordingly modified. In awarding the wife alimony in gross the court said:

"Both parties contributed in accumulating the property. By the decision of Schafer v. Schafer, above, defendant, though not the party at fault, is denied any interest in the real property of plaintiff. She has lost her right to the property in case plaintiff's death precedes hers. Notwithstanding she is not the party at fault instead of being awarded a part of plaintiff's real property, she is actually losing ownership of all interest therein in case she survives the plaintiff.

"We think that defendant is not entirely free from blame for the trouble that has arisen between her and plaintiff. For that reason we do not allow her as liberal alimony as we would if she had been entirely free from blame. We do not know the age of these parties. Both of them must at least be in middle life, if not beyond. Both of them have worked like slaves to accumulate the property they have. Their industry is commendable and the day when they will have to quit such arduous lives as they have heretofore followed is near at hand. We think that under the circumstances, the situation of the parties and the nature of their property, that it it would be better for both of them if alimony is granted in lump rather than required to be paid in monthly instalments. For that reason the decree of the Circuit Court will be further modified by allowing defendant $3,000 as permanent alimony. In all other respects the decree of the court below is affirmed."

The court in *McCallister v. McCallister,* 113 Or. 124, 229 P. 687, awarded the wife, to whom the divorce was granted, the sum of $15,000 in gross. It appears from the facts in the case that the only real property owned

by the husband was in Illinois and that the value thereof was in excess of $50,000. The lump sum award made to the wife approximated the value of a one-third interest in such real property. The wife, in *Costello v. Costello*, 120 Or. 439, 251 P. 303, was awarded gross alimony amounting to $37,080 and an undivided third part in his real estate. The parties to that proceeding had been married nearly 40 years and the husband had accumulated property of the value of $268,013 net, all of which, except $63,848, was in real property. The total amount allowed the wife, including the lump sum alimony, amounted to $105,635. In affirming such allowance this court said: "We do not believe this to be an unjust division of the property between the two. The differences between the plaintiff and defendant have arisen partially, if not principally, out of defendant's selfish treatment of the plaintiff in money matters."

In two of the cases last above discussed lump sum allowances for alimony were granted for the reason that the real property of the husbands was located outside the State of Oregon and could not be affected by the divorce decree. In the Wilhelm case the law then in effect did not permit the court to award the wife any part of the husband's interest in property held by them as tenants by the entirety. In the Costello case the financial condition of the husband was such that he was able to comply with the lump sum award of alimony.

■ Considering all the facts and circumstances in the instant case we are of the opinion that the decree appealed from should be, and the same is, modified by awarding to Mrs. Siebert an undivided one-third interest in Mr. Siebert's undivided one-half of Lot 9, Block 111, Parkrose. Mrs. Siebert thereby becomes the owner of a two-thirds interest in Lot 9 and Mr. Siebert

retains the ownership of a one-third interest therein. In making this modification we have taken into consideration, together with the other matters hereinbefore mentioned, the fact that Mrs. Siebert has contributed a considerable amount of money to the common fund and has greatly assisted her husband in improving this property.

■ We do not think that it would be advisable to award the wife alimony in gross because of the husband's financial condition, nor do we think that the monthly allowance awarded by the Circuit Court as alimony should be changed. The evidence as to the amount of Mr. Siebert's earnings for that part of the year 1947 prior to the trial is very indefinite and uncertain and does not warrant this court in modifying the Circuit Court's award as to the periodical payments of alimony.

As herein modified the decree appealed from is affirmed. Appellant will recover her costs in this court.