Argued September 14; modified October 4, 1949

## MORROW *v.* MORROW
### 210 P. 2d 101

*Walter T. Durgan* and *C. M. Huddleston,* of Corvallis, argued the cause and filed a brief for appellant.

*Orval N. Thompson* argued the cause for respondent. On the brief were Weatherford & Thompson, of Albany.

Befóre BRAND, Acting Chief Justice, ROSSMAN, BAILEY, HAY, and PAGE, Justices.

BAILEY, J.

In this suit both plaintiff and defendant seek a decree of divorce and the determination of property rights. The Circuit Court (1) granted plaintiff a decree of divorce, $200 attorney's fees and costs; (2) gave her all the "furniture and furnishings had and possessed by the parties on October 14, 1946"; (3) decreed her to be the owner of a one-half interest in the real property held by the parties as tenants by the entirety; (4) decreed that "all moneys and other personal property other than personal clothing and effects jointly owned and possessed by said parties on or prior to October 14, 1946, be equally divided between plaintiff and defendant, each one-half thereof"; and (5) granted to defendant "as his sole and separate property the farming tools, implements, machinery and vehicles had and possessed by the parties on October 14, 1946." From subdivisions 3, 4, and 5 of the above decree plaintiff has appealed. Our review of the case is limited to the property settlement decreed by the trial court.

Plaintiff and defendant were married in Carson City, Nevada, on July 7, 1942. They were then living in California. At the time of their marriage plaintiff owned some residential property in San Carlos, Cali-

fornia; a contract of sale of a farm on which there was an unpaid balance of approximately $2,400, payable $30 monthly; and the furniture and furnishings of the house in which she was then living. Defendant had about $150 in a checking account in the bank and owned an automobile that he bought for $1,500, on which there was a $900 mortgage. There was also $1,067.27 in their joint savings account which will later be discussed in more detail.

Plaintiff, whose name then was Else Fischer, met defendant the latter part of August, 1941, when he rented a room in her home in San Francisco. He moved into this room on the 1st of September, 1941, and on the 25th day of that month they became engaged to be married. She had, shortly prior thereto, received an interlocutory decree of divorce from Henry Fischer. On or about December 20, 1941, they opened a joint savings account in The San Francisco Bank in the names of Claude E. Morrow or Else Fischer. The initial deposit was $400, $300 of which was supplied by him and $100 by her. After their marriage this joint account was closed and the balance of $1,156.52 then on deposit was transferred to a new account in the same bank in the name of Claude E. Morrow or Else Morrow. The total deposited in the two accounts was $2,417.72, the greater portion of which, to wit, more than $1,600, was plaintiff's own money.

Defendant testified that after this account was opened he had no individual checking or savings account. It appears, however, from the record, and subsequently admitted by defendant, that on November 26, 1941, he opened a checking account in The San Francisco Bank and that thereafter, and prior to October 2, 1942, he deposited therein $2,322.13. On October 2, 1942, he transferred the balance of $369.54, in this

checking account, to a joint checking account in the same bank in the names of Claude E. Morrow or Else Morrow. There was deposited in this account a total of $1,936.76, and at least $600 thereof was transferred from the joint savings account of Mr. and Mrs. Morrow. The total amount deposited in the joint savings account and in the joint checking account was $4,354.48.

We quote from defendant's brief as follows: "The parties formed the joint bank account * * * in November, 1941. Thereafter the money earned by respondent, $65.00 to $70.00 per week, was deposited in this joint account and the respondent had earned and placed in this account $6,284.00 prior to the time the parties came to Oregon." We have already pointed out that the joint savings account was opened in December, 1941, not in November; that the total amount deposited therein was $2,417.72; and that at least two-thirds of this amount was plaintiff's own money. In the joint checking account, which was opened on October 2, 1942, there was deposited a total of $1,936.76, and, as hereinbefore stated, at least $600 of that amount was transferred from the joint savings account.

Plaintiff and defendant moved to Oregon in August, 1943. Before leaving California defendant withdrew the balances in their two joint accounts, to wit: $860.86 from the savings account and $216.12 from the checking account. About the time they left California there was deposited in their joint names in a bank at Oregon City $5,520.54, which money was later withdrawn therefrom and, on the 17th day of September of that year, deposited in their joint savings account in a bank at Corvallis. This deposit consisted of $2,030, which Mrs. Morrow received as the balance of the sale price of the farm hereinbefore mentioned, and the money which she received from her San Carlos property, which was

sold for $6,700. Out of the amount of money received by her from the sale of the San Carlos property, she paid to the American Trust Company, in satisfaction of a mortgage thereon, the sum of $3,126.99. It is suggested by defendant that she probably had to pay a real estate broker's commission. It will thus be seen that practically the entire amount, if not all, of $5,520.54 deposited in the bank at Corvallis came from the sale of real property in California owned by plaintiff.

On September 11, 1943, plaintiff and defendant bought a tract of approximately 72 acres in the vicinity of Corvallis for the sum of $6,350. The earnest money of $500 was paid by defendant, apparently from the money which he withdrew from the two joint accounts in San Francisco. On November 12, 1943, the Morrows paid on the purchase price $4,350, withdrawing that amount from their joint savings account in the Corvallis bank. Later on they sold three acres for $1,250 and applied it on the purchase price. The $5,520.54 sent from California was, with the money received from the sale of the three-acre tract, more than sufficient to pay the entire purchase price of the farm.

It is, however, contended by defendant that he should be given credit for some of the money received from the sale of the San Carlos property. He asserts that he paid on the mortgage on the San Carlos property five monthly installments of $33.84 and 19 monthly installments of $34.50, making a total of $824.70, and that he performed certain work in improving that property. He testified that he made the first payment on September 5, 1941, which was a very few days after he met plaintiff. At the time plaintiff and defendant were married and until they moved into the San Carlos property in September,

1942, where they lived until they came to Portland in August, 1943, Mrs. Morrow was receiving $40 a month rental therefrom. The money thus received was at first deposited in their joint savings account and later, after it was opened, in their joint checking account. Mrs. Morrow denies that he paid any of his own money on the mortgage and asserts that if he made any payments it was with money which she furnished him for that purpose or from their joint accounts.

We are unable to determine from the record whether defendant made any of these payments. Whatever he did pay, if anything, and the value of any work he performed on the property, would, to a large extent, be offset by the rental value of the property while they lived there and by the reasonable value of his board and room at plaintiff's home before they were married. Defendant admits that he did not pay for his room or board, except $15 for the first month's rent, and that in lieu of such payment he helped to pay their living expenses.

After the Morrows purchased the farm they worked elsewhere for wages. She earned, up to the time of their separation in the fall of 1946, in excess of $3,600, which was deposited in their joint account. The money which Mr. Morrow earned after coming to Oregon was also apparently deposited in this account. Both of them have done much to improve the property.

Most of the furniture and furnishings in the home in Corvallis belonged to the plaintiff before she married the defendant. The furniture and furnishings which were purchased after coming to Oregon were paid for from their joint account and money received by Mrs. Morrow from the insurance on the life of her son who was killed in World War II. The "farming tools, implements, machinery and vehicles" which the

court awarded to defendant were purchased from the joint funds of the litigants.

■ Section 9-912, O. C. L. A., as amended by chapter 407, Oregon Laws 1941, and as further amended by chapter 557, Oregon Laws 1947, does not require the court to award to the party not at fault any part of, or interest in, the real or personal property owned by the other party but does require the court to award to the one to whom the divorce is granted "such undivided interest in, or in severalty, such part or parts or the whole of, the real property or personal property, or both, or right, interest or estate in either or both thereof, owned by the other at the time of such decree, as may be just and proper in all the circumstances". *Siebert v. Siebert,* 184 Or. 496, 199 P. (2d) 659. The 1947 amendment applies to and governs pending proceedings. *Siebert v. Siebert,* supra.

In *Siebert v. Siebert,* supra, this court said: "Where property is held by the husband and wife as tenants by the entirety the party to whom the divorce is granted becomes the owner of an undivided one-half thereof unaffected by the 1947 amendment. The other undivided one-half, or an interest therein, may be awarded to the party not in fault, if found by the court to 'be just and proper in all the circumstances'."

■ At the time of the trial in the circuit court plaintiff was 48 years and defendant 56 years of age. There is nothing in the record to indicate that both of them are not in good health. After carefully considering all the facts in this case, and particularly the ages and health of the parties, the amount of money and labor which plaintiff and defendant each has contributed to the acquisition and improvement of the property owned by them, and the granting of the

divorce to the plaintiff without allowance of alimony, we are of the opinion that the decree appealed from should be modified by awarding to the plaintiff one-third of defendant's undivided one-half interest in the real property here involved. Mrs. Morrow thereby becomes the owner of a two-thirds interest in such real property. The decree should be, and the same is, further modified by awarding to plaintiff a one-half interest in the "farming tools, implements, machinery and vehicles had and possessed by the parties on October 14, 1946", the date of the institution of this suit.

Plaintiff further contends that the circuit court erred in decreeing that "all moneys and other personal property owned and possessed by said parties on and prior to October 14, 1946, be equally divided between plaintiff and defendant, and in failing to award plaintiff one-half or more interest in said property owned and possessed on March 29, 1948", the date of the entry of the decree. As we understand the defendant's brief he does not seriously take issue with the plaintiff on this contention. We are therefore of the opinion that "all moneys and other personal property other than personal clothing and effects jointly owned and possessed by said parties on or prior to" March 29, 1948, be equally divided between plaintiff and defendant, each one-half, and that on the remand of this cause to the circuit court it proceed and determine their rights thereto. The expense and operation of the farm must be considered in determining the net proceeds therefrom belonging to each party.

■ It is further contended by plaintiff that the trial court erred in failing to award alimony to her. In her notice plaintiff limited her appeal to three questions

relating to the property settlement between the litigants by the trial court and did not refer to the failure of the circuit court to allow her alimony. Therefore the failure of the circuit court to allow plaintiff alimony is not before us for consideration. § 10-803, O. C. L. A., as amended by chapter 119, Oregon Laws 1943, and § 10-811, O. C. L. A., as amended by chapter 123, Oregon Laws 1945, and as further amended by chapter 192, Oregon Laws 1947; *Perkins v. Perkins,* 72 Or 302, 143 P. 995.

The decree appealed from is accordingly modified in the respects hereinbefore mentioned, appellant to recover costs and disbursements in this court.