## SISK *v.* SISK.

### Opinion delivered April 24, 1911.

DIVORCE—UNCORROBORATED TESTIMONY OF PLAINTIFF.—A divorce will not be granted upon the uncorroborated testimony of a party to the suit.

Appeal from Mississippi Chancery Court, Chickasawba District; *Edward D. Robertson,* Chancellor; affirmed.

*W. J. Driver,* for appellant.

The testimony on the part of appellant presents a clear case of desertion by the appellee without cause, and the court erred in dismissing his complaint. 66 Ark. 16. In basing his conclusions upon the one fact that appellee at the time of the desertion was pregnant, and therefore not in a normal mental condition, the court lost sight of the testimony concerning the conduct of appellee prior to the date at which, in his view, she reached this irresponsible condition.

KIRBY, J. Appellant on February 7, 1910, sued appellee for divorce, alleging as grounds therefor willful desertion of him for more than one year without any reasonable cause, and such indignities offered to his person by appellee as rendered his condition intolerable. Appellee filed no answer, and did not resist the suit. The testimony tended to show that appellant, a widower 51 years old with three children at home, two boys and a girl, the eldest being twelve years old, married, on March 11, 1908, appellee, a widow with five children ranging in age from Earl, twenty years, the eldest, down to six years, the youngest; that they lived together about a year, and that she left appellant's home in Blythe-

ville on February 25, 1909, and moved back to her own home in the same town, where she was living at the time of the marriage; that their baby was born shortly thereafter. Appellant complained that his wife was ill and cross, and always finding fault, and quiet and pouting, and had nothing to say. One afternoon in June he came home and "found her sitting around with nothing to say," and, to his repeated inquiries as to what was the matter, she only replied, "Nothing." He states: "Went on that way until time to retire, and I asked her again what was the matter, and she said: 'Nothing.' I said: 'You have been so you would have nothing to say, and I know there is something the matter.' I said: 'I have asked you my last time for life, and now you can answer it or let it alone.' Then she said: 'Well, I got to studying this evening while everybody was out, and my boys went away from home this morning, and I concluded I had made a mistake in marrying and made my boys leave home,' and I said to her, 'Have I said anything to hurt your feelings or cause you to leave?' She remarked, 'No.' And I said, 'Did any one else hurt your feelings? 'She said, 'No.' "

"Q. Did your youngest child remain at your home during all the time the defendant lived with you? A. No. Q. Why did it not? A. She and her youngest children were cross with it, so it would cry after me every time I would fix to go to the store, and I took him from the table when he and I had finished breakfast one morning, and stood him down before me to warm him before leaving the house. At that time she and the little girls were standing around the stove, and when I spoke of going the little fellow commenced to cry, and the oldest girl commenced to fuss at him about crying, and I remarked, 'If you all would treat him kindly, he would not cry so much.' Then Mrs. Sisk remarked, 'You are a liar, because you are such a rotten fool about him,' and I remarked to her and said, 'If you all don't treat him kindly, I will have to get him a home,' and she said, 'Well, take your boy and go it.' That day I secured him a home, which was on Saturday, and Monday I moved him to it."

He then had a little trouble with Earl, her eldest son, about four dollars he loaned him when he wanted it returned, and "the woman was mad all evening and at bed time, accusing me of telling him to leave. It was a rare thing that I would have

any trouble with her children, but when I did she would pout and finally raise trouble about something that I would not know anything about. Q. How long did this character of trouble continue? A. As long as we lived together. Q. What was the immediate cause of the separation that occurred at which time she left your home? A. Well, she said she was going to leave on account of the last quarrel that Earl and I had, and stuck to it, and did leave."

Some of the neighbors were called, and one said appellant lived in a commodious and well-furnished house, and provided suitable food and clothing for his family and servants to assist his wife, and seemed to be an affectionate man to his and her family.

Another testified: "I have known these parties since the year 1880. I have observed the conduct of defendant towards her husband, and it was one of neglect and indifference to him and his children. I have observed his conduct, and never noticed any difference between his own and her family."

Two or three others testified to the same effect.

The chancellor rendered the following decree: "The proof shows that the alleged desertion of plaintiff took place while the wife was with child, and which was born about five months after separation. The plaintiff husband, it appears, made no effort to effect a reconciliation, either before or after the confinement of the mother, but brings this suit immediately after one year had expired after the separation. The condition of the wife at the time of the separation called for the tenderest care and solicitude from her husband, it being a fact well known to medical jurisprudence and common experience that women at such times are more or less irritable and easily excited. And it is the opinion of this court that the defendant was in such a condition that she should not be held to that strict account that she would have been under normal conditions. The complaint will be dismissed."

From this decree the appeal comes.

No witness testified as to the fact, the length of time, nor the cause of his wife's desertion and abandonment of him, but appellant, nor was there any corroboration of his statement except so far as the fact that she was not living with him at the time

of the trial tended to show it. If she had expressly admitted the truth of every statement made by him and his testimony had shown that she had wilfully deserted and absented herself from him for the space of one year without any reasonable cause, it would not have warranted the granting of a divorce. Divorces are not granted upon the uncorroborated testimony of the parties and their admissions of the truth of the matters alleged as grounds therefor. Kirby's Digest, § 2677; *Rie* v. *Rie,* 34 Ark. 37; *Scarborough* v. *Scarborough,* 54 Ark. 20. Neither does his statement of his wife's conduct, if taken as true, show such indignities offered to his person as would render his condition intolerable within the meaning of the law. Her fitful temper and variable moods were accounted for by his conduct and her condition, as the chancellor found.

The decree dismissing the complaint is affirmed.