McClain *v.* McClain.

5-195                                    263 S. W. 2d 911

Opinion delivered November 30, 1953.

Rehearing denied January 11, 1954.

*Carl Langston,* for appellant.

*George W. Shepherd,* for appellee.

J. Seaborn Holt, J.  The parties here were married in November, 1941.  November 14, 1952, appellee, Trudie McClain, sued appellant for divorce on the grounds of drunkenness for more than a year, cruelty, and indignities, and asked that all property rights between them be adjudicated, that he be restrained temporarily from occupancy with her and enjoyment of the two acre tract upon which they lived and operated a beer and sandwich shop.

Appellant answered with a general denial, asserting that separation of the parties was the fault of appellee, and not his fault,—in effect, a plea of recrimination. He pleaded no affirmative defense, but prayed that the relief for which appellee prayed be denied and that she be required to account for all property which they jointly owned and that he "be awarded possession of all real and personal property" located on the two acre tract, including the beer and sandwich shop, known as "Red Gates Inn."

Prior to trial on the merits, the court, on sufficient showing by appellee, and execution of proper bond, granted to her the temporary injunctive relief prayed.

March 4, 1953, trial was had on the merits.  The court denied appellant's prayer that the prior injunctive relief granted appellee be set aside, denied any damages to appellant resulting therefrom and granted appellee an absolute divorce.

The court found "that the business being conducted upon the premises hereinafter described, known as 'Red Gates Inn,' was a joint venture and that said business shall be and is hereby terminated as of the date of this decree; and the Court further finds that the fixtures now located in said building and used in connection with the operation of said business are jointly and equally owned by plaintiff and defendant.

"It is the further order and judgment of this Court that the fixtures and furnishings located upon the premises hereinafter described shall be left in the pos-

session of the plaintiff, and she is hereby granted the right to use all of the same in connection with her use and occupancy of the premises hereinafter described.''

The court further found that the two acre tract in question was owned by the parties as an estate by the entirety and granted to appellee, Trudie McClain, ''the sole and exclusive possession of the same, together with the buildings located thereon, together with all fixtures and furnishings located thereon; and the defendant, Edley McClain, is hereby permanently enjoined and restrained from molesting the plaintiff in her use and occupancy in any manner of said premises above described.''

There was a further finding that the rental value of this real estate and premises was $50.00 per month and appellee was ordered to pay appellant, Edley McClain, $25.00 per month as his half of the rental value of the real estate and premises and to pay $25.00 per month on the unpaid balance due and becoming due on the purchase price of said property. The court further directed that two automobiles and certain livestock be sold and the proceeds equally divided between the parties, that appellee ''immediately make an inventory of all of the salable merchandise found to remain as of March 6, 1953,'' and that a one-half interest in said merchandise is granted to each of the parties and that appellee ''is hereby granted the right to continue the operation of a business upon said property but same shall not become a joint venture for the reason that the joint venture between plaintiff and defendant known as 'Red Gates Inn' ceased to exist as of the date of the entry of this decree, to-wit: March 6, 1953.''

From the decree is this appeal.

It appears from the testimony that these parties by their joint efforts acquired an estate by the entirety in two acres of land which they occupied as a homestead and upon which they operated a beer and sandwich shop known as ''Red Gates Inn.'' Trudie McClain, appellee,

obtained a beer license and operated the business with the help of her husband for several years. She was in active charge of the business. Each of the parties became addicted to excessive drinking of intoxicating liquor. Bickerings, quarrels and violent abuse were frequent between them. On one occasion, appellant became violent, threatened the life of appellee, fired a pistol at her, and threatened to burn the premises. `An intolerable situation was presented. Appellant had been treated by a number of doctors for excessive alcoholism and had been committed to the State Hospital for treatment for its excessive use.

From the testimony of a number of witnesses, it appears that neither of these parties is without blame. We have concluded, however, without detailing the testimony, that appellee was the lesser offender. Where, as here, the evidence appears almost equally divided, the findings of the Chancellor, after a patient and painstaking hearing, who saw and observed all of the many witnesses presented, is persuasive on us and sufficient to tilt the scales in appellee's favor.

On trial *de novo* here, we cannot say that such findings were against the preponderance of the testimony. *Mewbern* v. *Mewbern,* 201 Ark. 741, 146 S. W. 2d 708; *Hensley* v. *Hensley,* 213 Ark. 755, 212 S. W. 2d 551; and *James* v. *James,* 215 Ark. 509, 221 S. W. 2d 766.

Appellant argues that the trial court erred in directing appellee to pay him only $25.00 per month as his half of the rental value of the real estate (2 acres) which they own as tenants by the entirety and was occupied as their homestead, and says that there is no evidence as to rental value of this property and that the court's action was arbitrary. We do not agree.

On the facts presented, it was within the discretion of the trial court to award this entire homestead tract, its use, benefits and occupancy to appellee for her life, without allowing appellant any rental, and subject only to the right of survivorship of appellant. Appellant, therefore, is in no position to complain. We

said in *Heinrich* v. *Heinrich,* 177 Ark. 250, 6 S. W. 2d 21, where a similar question of the possession of a homestead held by entirety was involved:

"Appellant contends, under the rules announced in the two cases cited, that the power and authority of the trial court was limited to making a division of the rents thereafter accruing from the property in question between appellant and appellee. This would be true with reference to any lands not embraced in the homestead, but not as to homestead land. There is nothing on the face of the record to show that the five-acre tract in question was not a homestead, so we must indulge the presumption that the testimony reflected that fact. This presumption brings the case clearly within the rule announced in *Woodall* v. *Woodall,* 144 Ark. 163, 221 S. W. 463, to the effect that courts may award to the innocent party in divorce suits the possession, for a limited time, or absolutely (meaning for life) of a homestead held by entirety."

We find no error in the action of the trial court in awarding appellee the injunctive relief against appellant which she prayed. Such action was within the court's power and the procedure followed appears to be in accordance with the provisions of §§ 22-404, 32-102 and 32-103, Ark. Stats. 1947.

Finding no error, the decree is affirmed.

ED. F. McFADDIN, Justice (concurring and dissenting). I concur in so much of the opinion of this court as fixes the property rights; but I dissent from so much of the opinion of this Court as awards Mrs. McClain an *absolute* divorce. I am of the opinion that Mrs. McClain should have only a *limited* divorce, rather than an *absolute* divorce.

Because *limited divorces* have almost "passed out of style" in our reported cases in the last thirty years, I think it well that Judges and others interested in marital relations should again give serious consideration to the granting of *limited divorces*: certainly such *limited di-*

*vorces* would prevent remarriage of either spouse and might bring about a reconciliation. Therefore, at the risk of being academic, I desire to briefly review this matter of *limited divorces* in order to show why chancery courts in Arkansas should resume the custom of granting only a limited divorce in a case in which the complaining party has been guilty of any wrong.

Our Statutes and cases envision three kinds of proceedings in cases of marital difficulties:

(1) A separate action for maintenance, which is a transitory action that may be prosecuted in chancery. Section 34-1201, Ark. Stats.; *Wood* v. *Wood,* 54 Ark. 172, 15 S. W. 459; *Shirey* v. *Hill,* 81 Ark. 137, 98 S. W. 731; *Kientz* v. *Kientz,* 104 Ark. 381, 149 S. W. 86; *Savage* v. *Savage,* 143 Ark. 388, 220 S. W. 459; and *Harmon* v. *Harmon,* 152 Ark. 129, 237 S. W. 1096.

(2) A limited divorce—that is, from bed and board but not from the bonds of matrimony. In the old cases this is called by its Latin name, "divorce *a mensa et thoro.*" Section 34-1202, Ark. Stats., says [1] that the Chancery Court ". . . shall have power to dissolve and set aside a marriage contract, not only from bed and board, but from the bonds of matrimony. . . ." This "bed and board" divorce is the *limited divorce.* See *Bauman* v. *Bauman,* 18 Ark. 320, 68 Am. Dec. 171; *Crews* v. *Crews,* 68 Ark. 158, 56 S. W. 778; *Gray* v. *Gray,* 98 S. W. 975; *Shirey* v. *Shirey,* 87 Ark. 175, 112 S. W. 369; *Crabtree* v. *Crabtree,* 154 Ark. 401, 242 S. W. 804, 24 A. L. R. 912; and *Clyburn* v. *Clyburn,* 175 Ark. 330, 299 S. W. 38.

(3) An absolute divorce. This is called a divorce from the bonds of matrimony, and the old cases refer to

---

[1] It is interesting to note a fact that seems to have been overlooked by the Digesters of Arkansas Statutes: all of what is now § 34-1202, Ark. Stats., from the beginning down through the sixth section, is the *same law that has existed verbatim* (with the exception of circuit court and chancery court terminology) since Statehood. See Chap. 51, § 1 of the Revised Statutes of 1837; Chap. 58, § 1 of English's Digest of 1848; Chap. 59, § 1 of Gould's Digest of 1858; § 2195, Gantt's Digest of 1874; § 2556 of Mansfield's Digest of 1884; § 2505 of Sandel & Hill's Digest of 1894; and § 2672 of Kirby's Digest of 1904. In other words, ever since Statehood, the courts have had authority to grant both limited and absolute divorces.

it by its Latin terminology, *i.e.,* "divorce *a vinculo matrimonii.*" See § 34-1202 as above quoted, and nearly every divorce case in our Reports, save only the few cited in Sec. (2) above.

For convenience in terminology, I will hereafter use the words "limited divorce" in referring to divorces from bed and board (*i.e.,* divorce *a mensa et thoro*) ; and I will use the words "absolute divorce" in referring to the divorces from the bonds of matrimony (*i.e.,* divorce *a vinculo matrimonii*). When the court grants a *limited divorce,* neither spouse can remarry, whereas when an *absolute divorce* is granted, either spouse is privileged to remarry at any time. The distinction between the two types of divorces is stated in 17 Am. Jur. 147, as follows :

"At common law and under the statutes in many states there are two distinct kinds of divorces—namely, the divorce *a vinculo matrimonii* or absolute divorce, and the divorce *a mensa et thoro*. The divorce *a vinculo matrimonii* or absolute divorce dissolves the marriage bond changing the status of the parties, while the divorce *a mensa et thoro,* sometimes called a decree of separation from bed and board, does not affect the status or dissolve the marriage, but merely relieves the parties from their obligations and rights as to cohabitation, support, and property interests."

Likewise, the distinction is stated in 27 C. J. S. 522, as follows :

"Divorces are of two distinct types, absolute or *a vinculo matrimonii,* and limited or *a mensa et thoro*. An absolute divorce or divorce *a vinculo matrimonii,* sometimes termed simply a divorce, terminates the marriage relation. A limited divorce or divorce *a mensa et thoro,* sometimes called a legal or judicial separation, suspends the marriage relation and modifies its duties and obligations, leaving the bond in full force."

When we read some of our cases in which the same person has been married four or five times, it seems that the courts ought to do something to prevent such a matrimonially-inclined person from being able to roam at

large, and certainly a *limited divorce* would prevent a subsequent marriage. Back in 1857 when this Court decided the case of *Bauman* v. *Bauman,* 18 Ark. 320, divorces were rare; and there was no necessity to put a restriction on re-marriage. But now the number of divorce cases reaching this Court is alarming; and some check should be put on the remarriage of parties, both of whom have been at fault. Furthermore, *limited divorces* have a tendency to encourage reconciliation.

Section 34-1209, Ark. Stats., says that if both parties have been guilty of any offense complained of in the divorce action ". . . then no divorce shall be granted or decreed." This is called the "recrimination section"; and originally our cases strictly and literally followed that law, so that a person seeking a divorce must show himself or herself to have been *entirely guiltless* before a divorce would be granted. See *Malone* v. *Malone,* 76 Ark. 28, 88 S. W. 840; *Strickland* v. *Strickland,* 80 Ark. 451, 97 S. W. 659; *Healey* v. *Healey,* 77 Ark. 94, 90 S. W. 845; and *Preas* v. *Preas,* 188 Ark. 854, 67 S. W. 2d 1013. Those cases should still be the rule today in all instances, in which the Court grants an absolute divorce; and the doctrine of "comparative guilt" should be the rule to be applied in cases of *limited divorce.*

Gradually we have developed the doctrine of "comparative guilt," and have awarded a divorce to the *least guilty* of the two parties.[2] Thus in *LeMaster* v. *LeMaster,* 158 Ark. 206, 249 S. W. 589, we held that where a preponderance of the evidence showed that the husband was *chiefly responsible,* the wife was granted a divorce. In *Hensley* v. *Hensley,* 213 Ark. 755, 212 S. W. 2d 551, we followed this doctrine of "comparative guilt," and said:

". . . and while we find that she was not without fault, we also find that appellee was the chief offender, and we think a divorce should be granted appellant. *LeMaster* v. *LeMaster,* 158 Ark. 206, 249 S. W. 589."

[2] For Annotations dealing with this doctrine of "comparative guilt" or "comparative rectitude," see 63 A. L. R. 1132, 159 A. L. R. 734, and 21 A. L. R. 2d 1267.

And in the case at bar, there is this language in the majority opinion:

"From the testimony of a number of witnesses, it appears that neither of these parties is without blame. We have concluded, however, without detailing the testimony, that appellee was the lesser offender."

Now I maintain that this doctrine of granting an absolute divorce on the basis of "comparative guilt" is in direct opposition to our Statute, § 34-1209, as above quoted.[3] I further insist that under the case of *Crews* v. *Crews*, 68 Ark. 158, 56 S. W. 778, we should grant only a *limited divorce* where both parties are at fault; we can decide which is the *least guilty* of the parties and grant that one a *limited divorce*. In *Crews* v. *Crews*, Chief Justice BUNN quoted the findings of the Chancellor:

". . . upon consideration the court finds that both parties are to a degree in fault and that neither is entitled to an absolute divorce, but finds that a decree of divorce from bed and board should be rendered. . . ."

Thus in *Crews* v. *Crews*, the Court allowed a *limited divorce* on the basis of "comparative guilt"; and I insist that when both parties have been guilty even to different degrees, then the only kind of divorce that should be granted is a *limited divorce*. I think the case of *Crabtree* v. *Crabtree*, 154 Ark. 401, 242 S. W. 804, does not in any way modify or overrule *Crews* v. *Crews*; and I think that chancellors should be encouraged to grant only a *limited divorce* to the *lesser guilty* of the two parties, and that an *absolute divorce* should be reserved to be granted only to a person who is *entirely without guilt or fault*. This would be a return to our old holdings; and sometimes a return to the old moorings is a very fine thing. In the hope that such may occur in divorce cases, I am writing this dissent.

---

[3] We have some cases which in effect disavow the doctrine of "comparative guilt." See *Evans* v. *Evans*, 219 Ark. 325, 241 S. W. 2d 713.