BEBOUT *v.* BEBOUT.

5-3177 375 S. W. 2d 798

Opinion delivered March 2, 1964.

*W. Q. Hall,* for appellant.

No brief filed for appellee.

CARLETON HARRIS, Chief Justice. Eva Bebout, appellee herein, and M. L. Bebout, appellant herein, were married on August 18, 1946. They lived together until April or May of 1961, at which time appellant left the home. Thereafter, on May 16, 1961, appellee filed her petition for separate maintenance. A motion to quash was filed by appellant on June 5, 1961, and on November 27 of the same year a general denial was filed. Thereafter, on February 1, 1962, M. L. Bebout filed a cross-complaint, seeking a divorce on the grounds of general indignities. On February 5, a hearing was held on the question of temporary allowances, and appellant was directed to pay $50.00 per month temporary alimony to his wife, together with an attorneys' fee. On June 16, 1962, Mrs. Bebout filed an "Amended and Substituted Complaint" in which she alleged general indignities, and asked the court for an absolute divorce. On June 28, appellant filed an answer denying the allegations in the

substituted complaint, and on the same day, filed a suit for divorce in Las Vegas, Nevada. On July 9, 1962, the Madison County Chancery Court heard the cause on its merits. Mrs. Bebout testified, along with Donna Swift, a witness on her behalf. Appellant did not testify, nor was any evidence offered on his behalf, though the court considered the testimony that Bebout had given on February 5, same having been transcribed and introduced by appellee as an exhibit. At the conclusion of the trial, the court awarded appellee a divorce, and vested her with absolute title to the home place in Madison County, which had been held as an estate by the entirety.[1] The proof reflected also that appellant and appellee had sold a piece of property to third parties, and had taken a promissory note payable to themselves for the unpaid purchase price, together with a mortgage to secure same. The note and mortgage were held in escrow by the First National Bank of Huntsville. The court, likewise, held that, under the evidence, Mrs. Bebout was entitled to the proceeds of the note. No actual decree was entered for one year, same being signed on July 8, 1963, *nunc pro tunc* as of July 9, 1962. From the decree, appellant brings this appeal.

It is necessary that this case be reversed because of insufficient corroboration of the wife's testimony as to grounds for divorce. In fact, Mrs. Bebout's testimony itself was rather weak as to indignities suffered. She stated that, during their marriage, her husband did not fuss, quarrel, or find fault with her. She said that he simply told her that he no longer intended to live with her, and left. "I think he had another woman." However, the proof reflected that he was living with another couple, and there is no evidence to substantiate her assertion. On cross-examination, she did state that on an oc-

---

[1] Appellant had stated, in the hearing on February 5, that Mrs. Bebout had made the last $500 payment on the home place:

"Q. You let her make the payment then with the understanding that she was to get title to the place, is that it?

"A. Right.

"Q. Then if that was your understanding, if she did make the payment then she was entitled to the title because you were going to let it go back? You didn't care about it, is that right?

"A. That's right."

casion "he choked me and told me he was going to kill me and bury me \* \* \*."

Donna Swift, the witness offered by appellee, was asked by counsel,

"Q. You have heard her testify. Do you know that what she has testified to is true?

"A. I think so, yes."

Subsequently, on cross-examination, Mrs. Swift was asked several questions relative to the property owned by the parties, and she answered,

"All I know is what she has told me. She and I are very good friends, and she has visited with me several times, and told me about these things, but —"

It really is not clear from Mrs. Swift's testimony as to exactly what she meant by, "All I know is what she has told me." It could relate to both the grounds for divorce and the matters concerning the rights of the parties in property they owned, or the statement could be taken as referring only to the properties. Actually, from her apparent lack of personal knowledge, it would appear that Mrs. Swift was not really acquainted with any of the facts. However, be that as it may, the testimony, "I *think*[2] so, yes" does not constitute sufficient corroboration to comply with legal requirements. Of course, actually, corroborating evidence, to carry the proper amount of weight, should detail the facts with which the witness is familiar, but even where the evidence is abbreviated, as here, the witness should be positive in her statements. In *Highsmith* v. *Highsmith,* 219 Ark. 123, 240 S. W. 2d 5, the corroborating witness stated that she *understood* appellant left her husband on the date of separation without cause, and that she was under the *impression* that he was good to her. A divorce was granted, and the case appealed to this court. In reversing that decree, we said:

"Our court has many times held in such cases that the testimony of the plaintiff must be corroborated. One

---

[2] Emphasis supplied.

case is *Sisk* v. *Sisk,* 99 Ark. 94, 136 S. W. 987, where the facts are similar to this case. A recent case (January 29, 1951) is *Stimmel* v. *Stimmel,* 218 Ark. 293, 235 S. W. 2d 959. Here the deposition of Zelma Pumphrey plainly shows that she knew very little about the material issues and that her statements were based on impressions or hearsay.''

The pleadings were not amended to allege desertion, nor was there any corroborating evidence to that effect.

Since appellee has not sustained her cause of action as required under our decisions, it follows that the court erred in granting her a divorce. It may well be that the Chancellor, in disposing of property rights, reached the right conclusions, both from an equitable and legal standpoint, but we do not reach these questions, since the reversal of the Chancellor's finding as to the divorce means that the entire decree must fall.

Reversed.