M. L. Bebout *v.* Eva Bebout

5-3980                                                                  408 S.W. 2d 480
Opinion delivered October 31, 1966
[Rehearing denied December 5, 1966.]

*W. Q. Hall,* for appellant.
*Putman, Davis & Bassett,* for appellee.

PAUL WARD, Justice. This litigation, relating to a division of property between man and wife, arose out of the factual situation presently summarized. Four separate stages of legal procedure between these parties preceded this appeal.

*First.* On May 16, 1961 the wife filed a suit for separate maintenance; the husband, on cross-complaint, asked for a divorce and one-half of all real and personal property, and then the wife asked for a divorce and a share of the property. On July 9, 1962 the trial court *found* the wife should have the homestead consisting of forty acres (held by the entirety) and also should have a note (being the proceeds from the sale of 148.46 acres of land) which was held by the entirety; also the wife was granted a divorce.

*Second.* The above mentioned decree was appealed to this Court, and on March 2, 1964, we reversed the trial court, holding there was no corroborating evidence to sustain the divorce. We also said: ". . . the entire decree must fall." See: *Bebout v. Bebout,* 237 Ark. 735, 375 S. W. 2d 798.

*Third.* On June 28, 1962 the husband filed a complaint in a Nevada court, asking for a divorce. The divorce was granted on July 23, 1962—just two weeks after the wife was granted a divorce in this State (as pointed out previously). It is noted here that on the same day the husband filed his complaint in Nevada he also filed a pleading asking for a divorce in Arkansas.

*Fourth.* The suit from which comes this appeal was filed by the husband (appellant herein) on April 22, 1964. In the complaint appellant alleged that he and his wife (appellee herein) were the owners by the entirety of the real and personal property referred to previously. He asked that said property be partitioned equally between them. Appellee answered, alleging the invalidity of the Nevada divorce, and that she was entitled to all the property. On January 11, 1965 the trial

court found: (a) the parties previously agreed that appellee was the owner of forty acres of land and that by "reason of said agreement" appellee is the owner in fee simple of said land; The court also found that the parties "are owners as tenants by the entirety" of the promissory note; (b) The court was not required to give "full faith and credit" to the Nevada divorce decree and "the parties hereto are still husband and wife to each other despite the Nevada decree," and; (c) appellant's petition for partition should be dismissed.

From the decree of dismissal appellant now prosecutes this appeal, contending the trial court erred; One, in refusing to give full faith and credit to the Nevada decree; Two, in holding the Nevada decree was obtained by fraud; Three, in holding appellant was not domiciled in Nevada, and; in "awarding to the appellee the real estate."

Under our view of the case it is necessary to discuss only two questions: One, was appellant domiciled in Nevada when that court granted him a divorce, and Two, did the trial court err in awarding the real estate to appellee.

*One.* We have concluded that the trial court was correct in holding appellant was not domiciled in Nevada. Appellant's own testimony was to the effect that he left his home in Madison County (Arkansas) and went to Nevada, knowing that the divorce suit was pending in this State; he knew when he filed for a divorce in Nevada that he had, on that same day, asked the court here for a divorce; he admitted he left here on a vacation, that he did not work in Nevada, that he rented a motel room while there, that he had read about the "quickie" divorces in Nevada; he admits that shortly after the Nevada decree he returned to his home at Huntsville in Madison County, and that he later bought real estate in that county; he admitted he left for Nevada when he learned it would take over a year to get

a divorce here. It is not disputed that appellee did not, in person or by an attorney, appear in the Nevada court or otherwise contest the divorce action.

Under the above factual situation we think the trial court was fully justified in holding appellant was not at any time domiciled in Nevada even though he did reside there a few weeks. The word "domicile," according to Black's Law Dictionary, means "That place where a man has his true, fixed, and permanent home . . ." Since appellant was not domiciled in Nevada when he secured the divorce, the decree of that court was not entitled to full faith and credit in this State. See: *Williams* v. *State of North Carolina*, 325 U. S. 226. See also: *Cooper* v. *Cooper*, 225 Ark. 626, 294 S. W. 2d 617.

*Two.* We have concluded it was error for the trial court to give the real estate to appellee. It is not disputed that this property constituted an estate by the entirety. In the case of *Yancey* v. *Yancey*, 234 Ark. 1046, 356 S. W. 2d 649, this Court said:

> "It is necessary that this decree be reversed, because the court exceeded its authority in directing appellant to give appellee a quit-claim deed to his interest in the home held as an estate by the entirety. The Chancellor was evidently undertaking to arrive at an equitable solution relative to property rights in making his findings, and we find nothing erroneous purely from the standpoint of equity; however, we have stated on several occasions that in event of a divorce, property held as an estate by the entirety shall be treated as a tenancy in common. The court may then do one of two things; it may place one of the parties in possession of the premises, or it may order the property sold and the proceeds divided."

The *Yancey* decision was based on Act 340 of 1947—Ark. Stat. Ann. § 34-1215 (Repl. 1962)—which reads:

> "*Dissolution of estates by the entirety or survivor-*

*ship.* Courts of Equity, designated Chancery Courts within the State of Arkansas, shall have the power to dissolve estates by the entirety or survivorship, in real or personal property, upon the rendition of a final decree of divorcement, and in the division and partition of said property, so held by said parties, shall treat the parties as tenants in common.''

The intent and scope of the Act is indicated by certain language in the emergency clause which recognizes that courts of equity in this State have ''lacked the power heretofore, upon dissolution of the marital status, to dissolve estates in property created by the marital status.''

Thus this, under the statute, limited power of chancery courts to dissolve estates by the entirety is confined to cases involving a divorce—no divorce is involved here. This limitation has been repeatedly recognized and upheld by this Court. See: *McClain* v. *McClain*, 222 Ark. 729, 263 S. W. 2d 911; *Poskey* v. *Poskey*, 228 Ark. 1, 305 S. W. 2d 326, and; *Childers* v. *Childers*, 229 Ark. 11, 313 S. W. 2d 75.

Apart from its statutory power, a chancery court unquestionably is authorized to grant specific performance of an oral contract for the sale of land where there is sufficient part performance. It is necessary, however, that both the making of the contract and its performance be proved by clear and convincing evidence. *Hudspeth* v. *Thomas,* 214 Ark. 347, 216 S. W. 2d 389. Here the proof does not meet that stndard. The appellee did not plead the existence of a contract; she merely asserted as a conclusion that she owned the land. Her testimony was to the effect that the appellant agreed that she could have the property if she made the final payment on the purchase price. The appellant did not corroborate her statement. He testified that he thought that she was to receive the property (in the divorce case) and that ''if she was going to get it, let her

pay for it.'' There were no other witnesses to the transaction. We are unable to say that the making and performance of the asserted oral agreement were established by that high standard of proof that the law requires in such a case.

It is pointed out that the trial court did not award the note (held by the entirety by the parties) to appellee. Upon remand the trial court will have the right (based on the evidence) to determine how much, if any, maintenance shall be awarded to appellee, and to determine whether or not to award appellee possession of (not *title* to) the homestead.

The cause is therefore affirmed in part and reversed in part, and it is remanded for further action consistent with this opinion.

McFADDIN, AMSLER and BLAND, JJ., dissent in part.

GUY AMSLER, Justice, dissenting. I respectfully dissent from that part of the majority opinion which reverses the chancery decree.

In the first litigation between these parties, originating back in 1961 (they had already separated and he had moved out of the house), Mr. Bebout assured the court that he had given his interest in the home place to his wife on condition that she make the final payments thereon. At a hearing on February 5, 1962, he testified:

> ''Q. You let her make the payment then with the understanding that she was to get title to the place, is that it?
>
> A. Right
>
> Q. Then if that was your understanding, if she did make the payment then she was entitled to the title because you were going to let it

go back? You didn't care about it, is that right?

A. That's right."

See *Bebout* v. *Bebout,* 237 Ark. 735, 375 S. W. 2d 798, footnote page 736 (cited in majority opinion).

Subsequent to the 1962 trial, Mr. Bebout took off to Reno, Nevada, procured "a quickie divorce" (which this court is unwilling to recognize) and then drifted around in Ohio, Texas and perhaps other places for sometime before returning to Madison County. Apparently during his travels or after he got back to Madison County he changed his mind about the place belonging to his wife and filed suit for partition. The chancellor refused partition on the grounds that he (Bebout) had already given the property to his wife; that she was in possession and made the payments in accordance with the agreement they had and it belonged to her.

The majority concedes that equity has a right to grant specific performance of an oral agreement for the conveyance of land if there has been part performance, but say that both the making of the contract and its performance must be proved by clear and convincing evidence. Apparently the able and discerning chancellor concluded that the sworn testimony of both parties to the oral agreement that she should have the land, strengthened by possession and payment by the wife, was about as clear and convincing evidence as a court could expect, so he accepted it.

Nearly three years later appellant testified that he didn't remember if he gave the answers quoted above and in the same hearing swore that what he told her was "she could have either place." The trial judge heard the witness on both occasions and I think correctly evaluated the testimony. Appellee (the wife) testified that her husband agreed that the place was hers if she would pay it out; which she did. There is no contention

that the court reporter did not correctly report the testimony of appellant (husband) in the original hearing.

The majority says that "the appellee did not plead the existence of a contract; she merely asserted as a conclusion that she owned the land." In her answer to appellant's present partition suit she denied that he was entitled to have the land partitioned and she claimed ownership of it. If the husband was not informed concerning the basis for her claim of title (which he was) it would have been a perfectly simple matter for his attorney to file a motion to make more definite and certain or to have availed himself of other procedures for obtaining information which would have enabled him to have presented his defense. Prayer in her answer was "wherefore, premises considered, defendant prays that the title to the lands described in the partition be vested in her . . ."

It is my feeling that neither *Yancy* v. *Yancy* (and other cases cited in the majority opinion) nor the statute dealing with the dissolution of an estate by the entirety or survivorship has anything at all to do with this law suit. The statute and the cases relate only to a situation where the chancellor grants a divorce and the parties are unable to agree on a division of property held by the entireties. We have no such condition here.

The exact point in issue here was passed on by us in *Ryan* v. *Roop*, 214 Ark. 699, 217 S. W. 2d 916. Ryan and his wife (who later married Roop) owned an improved lot (by the entireties) in Pine Bluff, Arkansas. In 1943 Ryan filed suit for divorce in Craighead County, Arkansas. There was a property settlement and on March 27, 1944, Ryan quitclaimed his interest in the aforementioned lot to his wife and thereafter on April 19, 1944, they were divorced.

In 1948 Ryan's former wife, Cordie Roop, instituted suit in the Jefferson County Chancery Court to quiet and confirm her title to the lot in question as

against Ryan, her former husband. The lower court granted the relief sought and on appeal was affirmed.

The late, highly regarded, Justice Minor W. Millwee expressed the views of this court as follows:

"The only question presented is whether a husband can convey directly to the wife his interest in an estate held by them as tenants by the entirety."

Then after referring to Act 86 of 1935, Ark. Stat. Ann. § 50-413 (1947) (conveyances between spouses) Justice Millwee wrote:

"It is held generally that a husband may by direct conveyance transfer to his wife his interest in an estate by the entirety. This rule has been followed even in jurisdictions where neither spouse can convey any interest in such an estate without the consent of the other, on the theory that such consent is to be implied from the grantee spouse's acceptance of the conveyance. It is likewise held that a husband may convey his interest in the entirety estate to his wife under statutes authorizing conveyances between the spouses. 41 C.J.S., Husband and Wife, p. 607; 26 Am. Jur., Husband and Wife, § 257. The former rule in this state that a conveyance directly from husband to wife conveyed only an equitable title ordinarily necessitated use of the common law device of a conveyance through a third person. This rule was changed by the 1935 act which is all inclusive in its terms and authorizes conveyances between spouses of any interest in real property. The deed of March 27, 1944, divested appellant of any further title or interest in the lot in question."

Under our system of jurisprudence a great deal of responsibility rests on a chancellor in determining the facts and we have said that unless we find his conclusions to be contrary to a preponderance of the evidence,

we will not disturb his findings. The majority is doing the trial court a great disservice when it reverses a decree in which there is only a "smidgen of proof" to justify such reversal and an abundance of "clear and convincing proof" to sustain what the chancellor did. I therefore dissent.

I am authorized to say that Justices McFaddin and Bland join in this dissent.