Claire Leone RAMSEY *v.* John Kelmer RAMSEY

75-95                                         531 S.W. 2d 28

Opinion delivered December 22, 1975

*H. David Blair*, for appellant.

*Reed & Blackburn*, for appellee.

JOHN A. FOGLEMAN, Justice. Appellant was granted a divorce by decree which ordered a property division. She appeals from that portion of the decree which relates to the division of property.

Her first complaint relates to the treatment of certain promissory notes. There were three notes which were made payable to both parties, arising out of the sale of a farm, cattle and equipment to Dr. L. G. Moody and Paul Strecker. In the transaction, the purchasers paid $30,000 cash and the

balance of $125,000 was evidenced by promissory notes, secured by a mortgage on the land, cattle and equipment. The notes were payable in annual installments of $6,250 over a period of 20 years. Appellee testified that one note for $55,-000 was for the land, the title to which had been held by the parties jointly before the sale. He contended that another $55,000 note was for cattle of which he was the sole owner. The remaining note for $15,000 was for equipment, according to appellee, who said that he was the sole owner of that, also. He testified that the balance remaining due on these notes was $118,750.

Appellee testified that, in spite of the different ownerships of the realty and personalty, all notes were payable to both appellant and appellee. Appellee had caused the attorney who represented him in the sale to redraft the notes several times before they were executed. Even though appellee testified that the notes for the cattle and equipment were erroneous in this respect, the necessity for correction of the earlier drafts seems to have been directed toward arranging for release of the cattle from the mortgage after five years and the equipment after seven years, without changing the identity of the payees. Apparently appellee took the notes to another attorney for examination before the divorce action was filed, but the record does not reveal that anything further was done about changing these notes.

The chancellor directed that the $55,000 note representing the balance due on the land be divided and awarded appellant one-half of the cattle note less $5,000 and held that appellee was entitled to the $15,000 note without any division. We agree with appellant that the chancellor erred in his treatment of these notes. The chancellor, in announcing his findings, stated that ordinarily a note made payable to a husband and wife jointly would entitle each to one-half on divorce and that he believed the parties were bound by the note, but noted that there was testimony that the cattle belonged to the husband and that the wife would have been entitled to only one-third of the cattle and, since there seemed to be some question about the matter, he allowed the husband one-half of the cattle note plus $5,000 and the wife the balance. He also stated that under a strict construction of the

law the parties would each be entitled to one-half of the equipment note, but, since in all probability the equipment was purchased by the husband, he was entitled to the entire note. Later the court said that this was done to compensate for the disparity in value of real estate awarded the respective parties.

These notes, in spite of appellee's protestations, were held as a tenancy by the entirety. We have long recognized that there may be a tenancy by the entirety in personal property, including choses in action. *Union & Mercantile Trust Co.* v. *Hudson*, 147 Ark. 7, 227 S.W. 1; *Ratliff* v. *Ratliff*, 237 Ark. 191, 372 S.W. 2d 216; *Cross* v. *Pharr*, 215 Ark. 463, 221 S.W. 2d 24. Of course, notes fall within this classification. *Jordan* v. *Jordan*, 217 Ark. 30, 228 S.W. 2d 636; *Terral* v. *Terral*, 212 Ark. 221, 205 S.W. 2d 198, 1 ALR 2d 1092.

The acquisition of property, whether realty or personalty, by persons who are husband and wife by an instrument running to them conjunctively, without specification of the manner in which they take, usually results in a tenancy by the entirety. *Terral* v. *Terral*, supra. See, *Jordan* v. *Jordan*, supra. See also, *Gladowski* v. *Felczak*, 346 Pa. 660, 31 A. 2d 718, 151 ALR 418 (1943); *American Central Insurance Co.* v. *Whitlock*, 122 Fla. 363, 165 S. 380 (1936); *Craig* v. *Bradley*, 153 Mo. App. 586, 134 S.W. 1081 (1911); *In re Greenwood's Estate*, 201 Mo. App. 39, 208 S.W. 635 (1919); *Boland* v. *McKowen*, 189 Mass. 563, 76 N.E. 206 (1905). There is at least a presumption that the taking in such circumstances is by the entirety. *In re Holmes' Estate*, 414 Pa. 403, 200 A. 2d 745 (1964); *Splaine* v. *Morrissey*, 282 Mass. 217, 184 N.E. 670 (1933); *Simon* v. *St. Louis Union Trust Co.*, 346 Mo. 146, 139 S.W. 2d 1002 (1940). The fact that the consideration given for the property taken in the two names belonged to the husband only is of little, if any, significance where he is responsible for the property being taken in both names as the presumption is that there was a gift of an interest by the husband to the wife, even though the wife may have no knowledge of the transaction. *Lauderdale* v. *Lauderdale*, 96 S. 2d 663 (Fla. App. 1957); *In re Parry's Estate*, 188 Pa. 33, 41 A. 448 (1898); *In re Holmes' Estate*, supra; *Lutticke* v. *Lutticke*, 406 Ill. 181, 92 N.E. 2d 754 (1950); *Donovan* v. *Donovan*, 223 Cal. App.

2d 691, 36 Cal. Rptr. 225 (1964). See *Terral v. Terral,* supra; *Dickson v. Jonesboro Trust Co.,* 154 Ark. 155, 242 S.W. 57; *Black v. Black,* 199 Ark. 609, 135 S.W. 2d 837. See also, *Harrison v. Knott,* 219 Ark. 565, 243 S.W. 2d 642.

Some courts base the tenancy upon an implied consideration that a wife who does not furnish any of the consideration to the third party executing the instrument or conveyance will faithfully perform the marriage vows as long as the marital status exists. *King v. King,* 286 A. 2d 234 (D.C. Ct. App., 1972); *Oxley v. Oxley,* 81 U.S. App. D.C. 346, 159 F. 2d 10 (1946); *Sebold v. Sebold,* 143 U.S. App. D.C. 406, 444 F. 2d 864 (1971). See also, *Tingle v. Hornsby,* 111 S. 2d 274 (Fla. App., 1959). But it seems that a decree of divorce awarded to the wife in such cases is conclusive of the fact that the consideration has been fully performed. *Sebold v. Sebold,* supra. Others base the tenancy upon the husband's obligation, both legal and moral, to provide for the wife. *Green v. Green,* 237 S.C. 424, 117 S.E. 2d 583 (1960); *Darden v. Meadows,* 259 Ala. 676, 68 S. 2d 709 (1953); Accord, *Carpenter v. Gibson,* 104 Ark. 32, 148 S.W. 508; *Collins v. Collins,* 176 Ark. 12, 2 S.W. 2d 41; *Hill v. Hopkins,* 198 Ark. 1049, 133 S.W. 2d 634; *Spradling v. Spradling,* 101 Ark. 451, 142 S.W. 848.

The presumption is strong, and it can be overcome only by clear, positive, unequivocal, unmistakable, strong, and convincing evidence, partially because the alternative is a resulting trust the establishment of which, under such circumstances, requires that degree of proof. *Honeycutt v. Citizens National Bank in Gastonia,* 242 N.C. 734, 89 S.E. 2d 598 (1955); *In re Parry's Estate,* supra; *Simon v. St. Louis Union Trust Co.,* supra; *Lauderdale v. Lauderdale,* supra; *Powell v. Metz,* 55 S. 2d 915 (1952); *In re Holmes' Estate,* supra; *Lutticke v. Lutticke,* supra. See *Stanridge v. Stanridge,* 253 Ark. 1004, 490 S.W. 125; *Simpson v. Thayer,* 214 Ark. 566, 217 S.W. 2d 354; *Hubbard v. McMahon,* 117 Ark. 563, 176 S.W. 122; *Carpenter v. Gibson,* supra; *Hall v. Cox,* 104 Ark. 303, 149 S.W. 80; *Mayers v. Lark,* 113 Ark. 207, 168 S.W. 1093; Ann. Cas. 1915 C 1094.

Where a note, or a note and mortgage, are made payable to a husband and wife, the same rules and presumptions apply. *Salvation Army, Inc. v. Hart,* 239 Ind. 1, 154 N.E. 2d 487

(1958); *Powell* v. *Metz,* supra; *Burke* v. *Coons,* 136 S. 2d 235 (Fla. App. 1962). Delivery to the husband is considered to be delivery to both husband and wife sufficient to make the gift complete. *In re Holmes' Estate,* supra. There being no evidence of fraud, appellee is charged with the knowledge of the legal effect of the instruments. *Hampshire* v. *Hampshire,* 485 S.W. 2d 314 (Tex. Civ. App. 1972). See also, *Donovan* v. *Donovan,* supra; Accord, *Belew* v. *Griffis,* 249 Ark. 589, 460 S.W. 2d 80; *Pratt* v. *Metzger,* 78 Ark. 177, 95 S.W. 451.

We certainly cannot agree with appellee that his testimony was clear, convincing or cogent evidence that the insertion of appellant's name on these notes was only a clerical error. Nor do we agree that the notes should be reformed. In the first place, clear, convincing, unequivocal and decisive evidence is required for reformation. *McIntyre* v. *McIntyre,* 241 Ark. 623, 410 S.W. 2d 117. In the next place, reformation was not sought in the trial court and the suggestion that the trial court should have reformed the notes first appeared in the brief of appellee, who did not cross-appeal. Since reformation was not an issue in the trial court and is not an issue here, we cannot consider it, and appellee's right to that relief is doubtful, had the question been timely raised. See *Darden* v. *Meadows,* 259 Ala. 676, 68 S. 2d 709 (1953). The failure to correct the note as to payee when the contract drafts were being revised may well have been taken to be a ratification by appellee. See *Bogard* v. *Powell,* 209 Ark. 714, 192 S.W. 2d 518.

The chancery court had no power to do anything with the property held by the entirety except to convert it into a tenancy in common. In most states, a decree of divorce in and of itself operates to convert a tenancy by the entirety into a tenancy in common. But this has never been the case in Arkansas. *Jenkins* v. *Jenkins,* 219 Ark. 219, 242 S.W. 2d 124; Ark. Stat. Ann. §34-1215 (Repl. 1962), adopted in 1947 to alter this rule of property, only authorizes the chancery court to dissolve such estates upon the rendition of a final decree of divorce. See *Killgo* v. *James,* 236 Ark. 537, 367 S.W. 2d 228. The same statute requires that the court, in the division of property so held, treat the parties as tenants in common. We have not countenanced any other disposition of such an estate and have construed the statute rather strictly. See *McIntyre* v.

*McIntyre*, supra; *Yancey* v. *Yancey*, 234 Ark. 1046, 356 S.W. 2d 649; *Bebout* v. *Bebout*, 241 Ark. 291, 408 S.W. 2d 480.

It logically follows that the chancellor erred in awarding one party a greater interest than the other in these notes made payable to both. See *Yancey* v. *Yancey*, supra. The effect of such a dissolution of an estate by the entirety was treated extensively and logically by the Supreme Court of Oregon in *Schafer* v. *Schafer*, 122 Or. 620, 260 Pac. 206, 59 ALR 707 (1927). Even though the decree of divorce in and of itself automatically effected the dissolution in that state, the statute governing the rights of the wife obtaining the divorce in the husband's property was strikingly similar.[1] That court concluded that to allow the court to do more than convert the tenancy from one by the entirety to one in common, would mutilate or change the legal effect of the decree, which itself was the dissolution of the estate. The Oregon court reasoned that the change in the estate was but the working out of a legal and equitable distribution of property held by the spouses during the existence of the marriage relation, holding that the wife could not be awarded one-third of the one-half interest of the husband as a tenant in common.

Insofar as the Moody and Strecker notes are concerned, the decree is modified to award appellant a one-half interest in each of said notes.

Appellant alleges that there were other errors in the property awards. She points out that she was given no interest in a promissory note of J. P. Davidson and that the chancellor did not take into consideration an indebtedness owed by one Tucker. She correctly asserts that she was entitled to a full one-third of appellee's property. Ark. Stat. Ann. §34-1214 (Repl. 1962); *Bowling* v. *Bowling*, 237 Ark. 199, 372 S.W. 2d 239. She testified that the Davidson note, which was awarded to appellee in the court's decree, was made to the parties jointly and that W. P. Tucker owed $2,-000 for cattle sold him on open account. Appellee testified

---

[1] The effect of *Schafer* and the validity of its rationale is not affected by such later decisions as *Siebert* v. *Siebert*, 184 Or. 496, 199 P. 2d 659 (1948) and *Morrow* v. *Morrow*, 187 Or. 161, 210 P. 2d 101 (1949), because of intervening significant statutory changes in that state.

that he was sole owner of the cattle for which the Davidson note was given as well as that sold to Tucker. What we have already said about jointly held notes applies to the Davidson note with equal effect. The chancellor's effort to equalize a difference between the value of Florida real property awarded the husband and Arkansas real property awarded the wife, all of which had been held as a tenancy by the entirety, by awarding appellee the entire note was inappropriate. The decree is modified to award each of the parties an equal interest in this note.

We cannot say on the record before us that the court erred in failing to award appellant an interest in the Tucker debt. Appellant was awarded certain furniture, household goods and funds in a bank account. Since we are unable to say from the record that appellant did not receive one-third in value of the personal property and since the court specifically asked the attorneys for both parties if he had overlooked anything, and received a negative response, we cannot say that appellant has demonstrated error in this regard.

We do, however, agree that there was a preponderance of the evidence to show that there was a wrongful disposition of personal property by appellee to defeat appellant's marital interest and that it was error for the court to refuse to consider or make any order concerning items removed by appellee. An extensive enumeration of these items was made by appellant and it was not substantially contradicted. See *Carr v. Carr*, 226 Ark. 355, 289 S.W. 2d 899. See also, *Austin v. Austin*, 143 Ark. 222, 220 S.W. 46, *Wilson v. Wilson*, 163 Ark. 294, 259 S.W. 742.

The real estate in Arkansas and that in Florida were disposed of by the requirement that the parties execute quitclaim deeds consistent with the court's findings. Appellant has expressed her satisfaction with this dissolution of these estates by the entirety. We are in no position on de novo review to direct the particular disposition to be made of the real estate on the record before us on this appeal.

We have attempted to arrive at a satisfactory modification of the court's decree to avoid a remand. We are unable to

do so because the trial court attempted to do equity between the parties by adjusting differences in real estate values by allowances of personal property and are unable to say what additional allowance should be made on account of property removed by appellee. We are further aware of the fact that payments on the jointly owned notes may have been made during the pendency of this litigation and that some accounting between the parties will be necessary. We have no satisfactory alternative to a remand of this case for the entry of a decree and further proceedings consistent with this opinion and for a determination what additional personal property award should be made to appellant and whether a different decree should be entered as to the Arkansas and Florida real estate. Cf. *Yancey* v. *Yancey*, supra.

The decree is reversed and the cause remanded.