Jacqueline RANEY *v.* Thomas D. RANEY

76-385                              561 S.W. 2d 287

Opinion delivered February 13, 1978
(In Banc)
[Rehearing denied March 13, 1978.]

*Ernie E. Wright* and *Roy E. Danuser,* for appellant.

*Friday, Eldredge & Clark*, by: *Michael G. Thompson,* and *Catlett & Henderson*, by: *Leon Catlett*, for appellee.

GEORGE ROSE SMITH, Justice. In this case the parties separated in 1973, after 19 years of marriage. There are three children, now grown or nearly so. Both parties sought a divorce, Raney on the ground of three years' separation and Mrs. Raney on that ground and indignities as well. After a protracted trial the chancellor announced that he could not find either party to be at fault, at once adding: "That necessarily means she would not be entitled to his, quote, property." At the chancellor's invitation Raney agreed that, as between the two, the divorce might be awarded to his wife under the three-year separation statute. The chancellor fixed alimony at $15,000 a year, directed that two jointly owned pieces of real property be sold and the proceeds divided, awarded the household furniture and furnishings to Mrs. Raney, provided her with a car, directed Raney to carry $100,000 of life insurance with Mrs. Raney as the beneficiary until her remarriage or death, and awarded Mrs. Raney a $7,500 attorney's fee. There is now no dispute about child custody or child support. Mrs. Raney appeals and Raney cross appeals, each seeking more favorable terms with respect to alimony and property division.

Inasmuch as the marriage was obviously beyond the possibility of being salvaged when the case was heard, the primary issue before the trial judge was whether the wife was the injured party, so as to be entitled to a statutory one-third interest in her husband's property. The chancellor, in refusing to make a finding of fault on either side, despite a plethora of charges and countercharges in the testimony, in effect found that the wife was not shown by the weight of the evidence to be the injured party. That finding is the primary point presented by the direct appeal.

We cannot say that the chancellor was wrong. Some two years before the separation Mrs. Raney decided to leave the Methodist Church, to which both parties belonged. She became a member of a sect that espouses "speaking in tongues," faith healing, the belief in demons, and other tenets not generally accepted by more orthodox denominations. No one doubts a person's right to adopt whatever religious beliefs

she chooses, but in this instance Mrs. Raney's new beliefs and practices became, day and night, such obsessions that she lost any real sense of responsibility toward her husband or toward her children. As the chancellor said: "Mrs. Raney was not willing to compromise at all on her beliefs under any circumstances, and Mr. Raney could not accept a change in his way of life and what he thought the family ought to be." We do not imply that Raney was blameless with regard to the ultimate breakdown of the marriage, but we find it impossible to say that Mrs. Raney is shown by the weight of the evidence to have been the injured party.

That being so, the chancellor had a fairly broad range of discretion in arriving at an equitable amount of alimony for Mrs. Raney. Raney's income and assets are both related to a family-owned investment firm and are hard to evaluate with anything like precision, but his resources do appear to be sufficient to provide for all members of the family. Thus the issue of alimony relates primarily to Mrs. Raney's needs, having regard to the couple's past standard of living. We must also bear in mind that Mrs. Raney will apparently receive more than $125,000 from the sale of the two properties owned jointly. Upon the testimony as a whole we do not feel able to improve upon the chancellor's award of alimony, either by increasing it or by reducing it.

The appellant also assigns as error the chancellor's failure to allow her to share the rentals from a commercial building in downtown Little Rock in which Raney has a one-fourth interest. There is outstanding a 20-year lease, expiring on July 30, 1978. Mr. and Mrs. Raney both signed the lease as lessors, along with the owners of the other three-fourths interest. Raney testified that his share of the rentals, amounting to $488 a month, had been used through the years for the maintenance of the family.

The chancellor correctly refused to award the appellant half the future rentals as a matter of contractual right. The facts in the case relied upon, *Ramsey v. Ramsey,* 259 Ark. 16, 531 S.W. 2d 28 (1975), are readily distinguishable. There in the sale of property owned by the husband alone the notes for the purchase price were drafted by an attorney and were made payable to the husband and wife jointly. Adhering to

our earlier cases, we held that a tenancy by the entirety was created, so that the wife became an equal co-owner of the notes.

That case would be in point here if the rentals due under this lease had been evidenced by notes payable jointly to Mr. and Mrs. Raney. That, however, is not the case. The lease merely provides that the rents are payable to the lessors, without even reciting the undivided interests of the three owners. Over a 20-year period Raney's share of the rents would total $117,120. It would be wholly unrealistic to hold that Mrs. Raney, merely by signing the lease, obtained an absolute contractual right to half those rentals for the term of the lease. Presumably her signature was added to the lease to satisfy the lessee about her agreement to the transaction. Mrs. Raney had the burden of proving the claim she now asserts, but there is no testimony whatever about the circumstances that attended the execution of the lease. All we have is the bare lease itself, which does not sustain the present claim.

As cross-appellant, Raney questions the trial court's direction that he carry $100,000 of life insurance for Mrs. Raney's benefit. At the time of the trial Raney had in force $149,000 of life insurance, which he described as mostly paid up. We regard this provision in the decree as being simply a way of awarding Mrs. Raney an interest in her husband's property.

Counsel state perfunctorily that they know of no precedent for such an order, but we have frequently reviewed decrees providing for the continuance or assignment of insurance policies in favor of the divorced wife or the children. Such an existing policy is property. Understandably, courts elsewhere have frequently recognized their power to direct that the husband in a divorce case maintain life insurance for the benefit of the wife. *Bildner* v. *Bildner*, 219 So. 2d 749 (Fla. App., 1969); *Cooley* v. *Cooley*, 320 Mich. 209, 30 N.W. 2d 840 (1948); *Shomaker* v. *Shomaker*, 166 Neb. 164, 88 N.W. 2d 221 (1958); *Williams* v. *Williams*, 44 Wis. 2d 651, 171 N.W. 2d 902 (1969).

Such a provision is particularly appropriate in this case. Raney's principal asset is his interest in the family-owned investment company. Not only is this property hard to evaluate, but also Raney's interest might not be readily subject to sale without undue hardship to him. In the circumstances the chancellor's decision to award the wife an interest in the existing life insurance rather than in other property is a sensible and practical solution to the problem of making a fair property allowance to the appellant.

As to the attorney's fee allowed in the court below, we do not consider it excessive and allow an additional $3,000 with regard to counsel's services in this court.

Affirmed.

HICKMAN, J., disqualified.

HARRIS, C.J., and FOGLEMAN and BYRD, JJ., dissent in part.

JOHN A. FOGLEMAN, Justice, dissenting in part. I respectfully dissent from the court's affirmance of the decree, insofar as the rentals are concerned. Appellant signed the lease as a lessor. She is not mentioned in the lease in any other capacity. I do not understand what the majority uses as a springboard to the presumption that appellant signed "to satisfy the lessee about her agreement to the transaction." Even when I read between the lines, I cannot find it. About what did the lessee want to be satisfied as to her agreement? Neither the lease nor the acknowledgment mentions dower. In the acknowledgment appellant is named as a lessor along with the other signers in that capacity.

The use to which the rentals had always been put is consistent with her claim. This, along with the bare lease, in my opinion, does sustain appellant's position. As a matter of fact, I do not agree with the majority that the bare lease does not sustain her position. I concede that *Ramsey* v. *Ramsey*, 259 Ark. 16, 531 S.W. 2d 28 *can* be distinguished on the facts. But I submit that the distinction made on the basis that a note was given in *Ramsey* and not given here is like that of "tweedle-dee" from "tweedle-dum." Of course, this lease did not con-

vert the title to the land into a tenancy by the entirety. But the entitlement to rents is something else. Apparently, the majority would hold that appellant's position was correct if a note had been given for the rent in which appellant was a payee (or would it, in addition, have to be drawn by an attorney?).

In case of dispute about default by the lessee in the payment of rent, could anyone doubt for a moment that appellant would have been a necessary party to an action for collection of rent from the lessee? Even though the husband was the owner of the property the wife named in a lease of the property has the legal capacity to sue and must be joined as a necessary plaintiff in an action to recover rent, as the action is maintainable by the joint lessors. *Pollack* v. *House & Herman,* 84 W. Va. 421, 100 S.E. 275 (1919). See also, *Bowen* v. *West Virginia Gas Corp.,* 121 W. Va. 403, 3 S.E. 2d 629 (1939). Where the lessee promises to pay rent to someone other than the owner of the leased property, the person to whom the rent is payable under the lease can enforce the promise. *Schnider* v. *White,* 12 Or. 503, 8 P. 652 (1885); *Toan* v. *Pline,* 60 Mich. 385, 27 N.W. 557 (1886). In such a case, the party to whom the rent is payable can sue in his own name, without an assignment. *Toan* v. *Pline,* supra. One named as the lessor, in a lease, even though not the owner of the property may maintain an action for rent in his own name. *Johnson* v. *Watkins,* 26 Ga. App. 759, 107 S.E. 341 (1921). See also, *Warr* v. *McLeroy,* 48 Ga. App. 801, 173 S.E. 767 (1934).

Rent can be severed from the reversion by the act of the lessor who has the right of reversion. *Deming Investment Co.* v. *Bank of Judsonia,* 170 Ark. 65, 278 S.W. 634. Although appellee held the title to the leased property interest, he effectively severed the right to rent, insofar as his interest was concerned by making the rent payable to himself and his wife. Assignment of rents need not be in any particular form. See *Silverstein* v. *Oakland Title Insurance & Guaranty Co.,* 122 Cal. App. 73, 9 P. 2d 846 (1932). The lease agreement itself was sufficient to put the lessee on notice that rents were due to appellant as well as to the other lessors. The lessees could not, in an action by her, or to which she was a party, have denied her title. *Clark* v. *Long,* 25 Ga. App. 807, 105 S.E. 654 (1921); *Johnson* v. *Watkins,* supra. Accord, *Garrett* v. *Edwards,*

168 Ark. 243, 269 S.W. 572; *Bass* v. *Willey,* 216 Ark. 553, 226 S.W. 2d 980; *Brewer* v. *Keeler,* 42 Ark. 289.

I agree with appellant that she was entitled to one-half of the rents accruing under the lease after the filing of her complaint and would modify the decree of the trial court to so provide.

I am authorized to state that the Chief Justice joins in this opinion.

CONLEY BYRD, Justice, dissenting in part. I concur in all of the majority opinion except the part that affirms the trial court's decree providing:

"Thomas D. Raney shall furnish and pay for life insurance policies on his life providing $100,000.00 in benefits, free and clear from the claim of debt or lien, to Jacqueline Raney, payable upon the death of Thomas D. Raney, until her death or remarriage."

As can be seen the foregoing portion of the decree does not make a property award to appellant. It does nothing more nor less than furnish security for the payment of alimony after the death of the husband. If the wife predeceases the husband or remarries, the life insurance requirement ceases by the very terms of the decree set out above. Neither is the requirement based upon life insurance in force which was carried for the wife's benefit because the proof shows that the appellant was not a beneficiary of any of the $149,000.00 in life insurance carried by appellee. Actually the proof shows that the $149,000.00 in policies had a cash surrender value of $80,000 or less and that appellee had borrowed $73,000 on the life policies.

The statement by the majority that "we have frequently reviewed decrees providing for the continuance or assignment of insurance policies in favor of the divorced wife or children," does not carry the citation of any authority. I suppose the majority is referring to those cases in which the parties mutually agree among themselves that the husband will carry a policy for the benefit of the wife or children but that of course does not mean that the courts of this State have the

authority to require a husband and father to amass an estate for a divorced wife or for his children.

The great majority of the courts that have had an occasion to consider the authority of the divorce court to require a husband to carry life insurance for the benefit of a divorced wife point out that in the absence of a statute or an agreement of the parties the court has no such authority. See *Ehrler* v. *Ehrler*, 328 N.Y.S. 2d 728 (1972); *Menor* v. *Menor*, 154 Colo. 475, 391 P. 2d 473 (1964); *Kunc* v. *Kunc*, 186 Okla. 297, 97 P. 2d 771 (1939), and *Todd* v. *Todd*, 311 S. 2d 769 (Fla. App. 1975).

In *Ehrler* v. *Ehrler, supra,* the court pointed out the "authority to make an award of alimony or of child support in a matrimonial proceeding is derived from statute, not from the common law. . . ." In holding that the court was without statutory authority to require the husband to continue in force, for the benefit of his divorced wife, certain policies of life insurance the court stated:

> ". . . absent such express statutory provision, or agreement of the parties that the allowance be a charge against the husband's estate after his death, an award whether of alimony or child support terminates on the husband's death . . . such being the usual rule, and the premiums of life insurance being paid to provide not the 'present maintenance' which the statutory provisions are designed for, but maintenance after the husband's death, judgment requiring payment of life insurance premiums is held not to fall within the 'support' authorized by § 236 or the 'care, education and maintenance' authorized by § 240. . . ."

In *Kunc* v. *Kunc, supra,* the trial court had ordered the husband to carry life insurance for the benefit of the divorced wife and his son. In holding that part of the trial court's decree void, the court stated:

> "As to the power of courts to award the care and custody of minor children and make orders for their support, education, etc., the authorities are divided as to whether courts under their general chancery powers

have jurisdiction and power in the absence of statute conferring such power.

In most states this power is conferred by statute in connection with statutory provisions concerning divorce. Where such power is conferred by statute, the statutory provisions control.

Section 671, O.S. 1931 L. 2 Okl. St. Ann. § 1277 provides: 'When a divorce is granted, the court shall make provision for guardianship, custody, support and education of the minor children of the marriage, and may modify or change any order in this respect, whenever circumstances render such change proper either before or after final judgment in the action.'

It will be observed that said section limits the power of the court to make provisions for guardianship, custody, support and education of the minor children.

There is no authority or power in the court to require the husband and father to build up an estate, by insurance or otherwise, to be paid to a child after it attains its majority."

In *Menor v. Menor, supra,* the trial court had directed the husband to keep in force $150,000 life insurance policy for the benefit of his divorced wife. In reversing the trial court, it was stated:

"There is no authority in this jurisdiction under which a husband may be compelled to carry insurance on his own life to the end that a divorced wife may from that source continue to receive alimony after the death of the husband. When a divorce is granted, the wife may be entitled to a share in the property of the husband and she may be entitled to receive alimony in accordance with her need and the husband's ability to pay. This obligation to pay alimony ends with death and a court has no power through the device of an insurance policy to require payments which could only be upheld as alimony to continue after death. This situation is clearly distinguishable from those cases in which the parties to a divorce action have settled their peoperty rights by contract, the terms of which are incorporated in the decree."

Three of the four cases cited by the majority do not support the majority's position. In *Bildner v. Bildner,* 219 S. 2d 749 (Fla. App. 1969), cited by the majority, the trial court had required the husband to continue in effect a $50,000 life insurance policy with the divorced wife as a beneficiary. With respect to that requirement the court there held:

> "We find merit in the appellant's contention that the court committed error in the provision of the amended decree which required the husband to pay annual premiums on an insurance policy on his life, which was owned by the wife and on which she was the named beneficiary. The substantial premium payments which the husband was ordered to continue for the rest of his life were not alimony payments, but, as recited in the amended decree, that provision was inserted to provide for the wife after the husband's death, and it was referred to in the amended decree as being "in addition" to awarding (lump sum) alimony."

In accord see *Todd v. Todd, supra.*

*Cooley v. Cooley,* 320 Mich. 209, 30 N.W. 2d 840 (1948), does not support the majority's assertion for there the court had before it a statute upon which it relied. That statute, Stat. Ann. 1947 Cum. Supp. § 21.131, provided:

> "Hereafter every decree of divorce shall determine all rights of the wife in and to the proceeds of any policy or contract of life insurance, endowment or annuity upon the life of the husband in which she was named or designated as beneficiary."

Not only do we not have such a statute, but in the case before us the wife was not a beneficiary in any of the existing policies.

*Williams v. Williams,* 44 Wis. 2d 651, 171 N.W. 2d 902 (1969), also cited by the majority does not support the statement in the majority opinion. In that case the husband was not directed by the trial court to provide the life and health insurance protection that he had provided during the marriage and on appeal the trial court was affirmed.

Alimony in Arkansas is controlled by Ark. Stat. Ann. § 34-1211 (Repl. 1962), which provides: "When a decree shall be entered, the court shall make such order touching the alimony of the wife . . . as from the circumstances of the parties and the nature of the case shall be reasonable . . . ." In *Birnstill* v. *Birnstill*, 218 Ark. 130, 234 S.W. 2d 757 (1950), we stated:

> " . . . alimony is not a sum of money, nor a specific proportion of the husband's estate given absolutely to the wife, but is a continuous allotment of sums, payable at regular intervals, for her support from year to year, and continues only during the joint lives of the parties, or, in case of divorce from the bonds of matrimony, until the wife marries again, and should be a reasonable and certain sum, having in regard her state and condition in life, and the estate and income of her husband, and be payable at stated and proper times."

Consequently, I submit that the trial court's direction to appellee to carry $100,000 in life insurance benefits is neither property rights nor "present maintenance" but in effect maintenance after the husband's death and as such was beyond the trial court's authority. It must be remembered that after the divorce, the appellant no longer had an insurable interest in her husband's life, Ark. Stat. Ann. § 66-3204 and Ark. Stat. Ann. § 66-3227 (Repl. 1966). Under Ark. Stat. Ann. § 66-3227(2), she certainly had no vested interest in the existing policies.

For the reasons stated I respectfully dissent to the affirmance of the decree requiring the husband to carry the $100,-000 life insurance policy.