Mary M. O'BANNON *v.* E. Barrie O'BANNON

CA 79-72                                    597 S.W. 2d 825

Court of Appeals of Arkansas
Opinion delivered March 12, 1980
Review Denied April 16, 1980
Released for publication April 30, 1980

824

*Sanford, Pate, Marchewski,* by: *Jon R. Sanford,* for appellant.

*Mobley & Smith,* by: *William F. Smith,* for appellee.

MARIAN F. PENIX, Judge. The parties were married in November, 1967. It was the second marriage for him, the third for her. Her two young daughters lived with the parties. His four children lived with their natural mother. They first lived in Mary O'Bannon's house for several months. Mary's daughters received allotments from the VA. They sold Mary's home, using the $2,000 equity for furnishings for a new home. Barrie O'Bannon's four children came to live with them. They made several moves—once to Indiana—then to Russellville. On July 26, 1976 Mary sued for a divorce and moved to Texas,. In an amended complaint she alleged general indignities. Barrie counter-claimed for divorce. The action was pending for a couple of years. On August 12, 1976, a Temporary Order was filed which provided for temporary maintenance as well as making Barrie responsible for the couple's joint property.

> . . . It is recognized that the plaintiff [Mary] has an interest in the properties earning a portion of this monthly support amount. The defendant [Barrie] shall manage all income earning properties and shall collect all rents and all payments on notes receivable and make an accounting to the plaintiff . . . .

In March, 1978 the Court, in response to Mary's petition objecting to the accounting figures of Barrie, appointed a receiver to take charge of all the property. Both parties were denied a divorce on the grounds of recrimination and condonation. The Court rendered an accounting determining what was joint and what was separate property and any and all credits due each party from the other. The Court retained jurisdiction after awarding Barrie the asset known as the "Misak Note" as his sole property.

Mary appeals and Barrie cross-appeals.

I

Mary O'Bannon alleges the Court erred in denying her a divorce. The transcript includes 451 pages of lengthy testimony and exhibits. Each party testified at length about the indignities visited upon him or her by the other party. Mary's 20 year old daughter and her 16 year old daughter testified that Barrie O'Bannon had made sexual advances and had physically and verbally abused them. Mary O'Bannon's brother, Lee Wilson, testified as to Barrie O'Bannon's unfriendliness back in 1972. Donna Rainwater testified she heard Mary O'Bannon threaten Barrie with criminal charges involving her daughters and with an IRS audit, if Barrie O'Bannon refused to [agree to] a settlement she had proposed.

Barrie's 22 year old son, Stephen, testified about verbal abuses from Mary and about her sexual indiscretions with him as a young teen-ager. Barrie's 16 year old daughter Sherri testified as to Mary's temper and Mary's slanders towards Sherri's mother, Barrie's first wife. Barrie's father testified about Mary leaving home when he and her mother-in-law came for a visit. Barrie's mother testified about Mary's concern for her daughters' financial security. She also testified about Mary's confidence to her that Barrie asked her to engage in oral sex. The evidence showed Mary had returned to the O'Bannon home on the occasion when Barrie's son Mike lost his leg in an industrial accident. Mary testified she did not have sexual relations with Barrie at that time, which was in July 1977. Barrie testified she did have sexual relations with him.

Judge Mobley observed all the witnesses, heard the testimony and weighed the evidence. He determined neither party was entitled to a divorce, thereby denying Mary O'Bannon's prayer for divorce. After reviewing the transcript we do not find the Chancellor's decision to be against the preponderance of the evidence. We therefore affirm the learned Chancellor's finding that neither party is entitled to a divorce on the ground of recrimination and condonation. In *Hoover* v. *Smith,* 248 Ark. 443, 451 S.W. 2d 877 (1970), Justice Fogleman stated:

> When the evidence is conflicting or evenly poised, or nearly so, the judgment of the judge who had the opportunity to see and hear the witnesses in evaluating the evidence is persuasive.

## II & III

Points II and III will be treated together as they both question and concern ownership and disbursement of income from the property.

In March 1978, Judge Mobley, in response to a petition by Mary, ordered the appointment of a receiver to handle all the property of the parties, and to render an accounting to the Court outlining the assets and liabilities. Mary made several objections to the receiver's accounting. The trial judge amended the accounting to reflect what he considered to be a just and equitable distribution to both parties.

Considerable property is involved in this lawsuit—his, hers, and theirs. Just which and how much is sharply disputed.

After a careful and painful study of the voluminous record, we find we must affirm the Chancellor's determination with the following modifications.

One of the disputed items is a Buy and Sell Agreement for property termed as the "Misak Note". This agreement named Barrie O'Bannon and Mary O'Bannon as seller. Mary O'Bannon relinquished her dower. The property was

Barrie O'Bannon's prior to the parties' marriage. The Chancellor determined this asset to be the sole property of Barrie O'Bannon and released it to him. No income derived from this property has been received or credited to Mary. We find this to be error.

*Ramsey v. Ramsey*, 259 Ark. 16, 531 S.W. 2d 28 (1975) contains facts not unlike the case at hand. There a husband and wife held real property jointly. This property, along with machinery and cattle which were the sole property of the husband, were sold. Both a contract and a promissory note were executed. Upon divorce, the Chancellor had awarded the wife a one-half interest in that portion of the note which pertained to the land. In reversing the Chancellor's decision, the Supreme Court stated the acquisition of personal property by persons who are husband and wife running to them conjunctively, without specification of the manner in which they take, results in a tenancy by the entirety. Although the machinery and cattle had been the sole property of the husband, her name as a payee on the note created a presumption of a gift from the husband to her. Therefore, one-half of the entire promissory note was awarded to the wife.

E. B. O'Bannon and Mary O'Bannon were listed as the seller on the Buy and Sell Agreement. The contract provides that the buyer will make monthly payments to the seller. As stated previously, the contract identifies the seller as E. B. O'Bannon and Mary O'Bannon. The purchase price was $65,000 of which $10,400 was a down payment. Monthly payments of $506.18 were to be made until the contract was fully paid. The seller further agreed to furnish a merchantable title to the buyer upon payment of the purchase price. The contract also stated:

> Mary O'Bannon, wife of E. B. O'Bannon, hereby agrees to relinquish her dower interest and homestead, if any, in the above described real property, upon payment of the purchase price specified herein.

Although no promissory note was executed, we believe the agreement comes within the purview and intention as stated in *Ramsey*, supra. The Buy and Sell Agreement was ex-

ecuted with the expectation of payments being received for the real property. It was not necessary for a promissory note to accompany the contract in order to create a presumption of joint ownership of the purchase price.

We are not unaware of *Raney* v. *Raney,* 262 Ark. 747, 561 S.W. 2d 287 (1978). *Raney,* involved a claim to lease income. The husband, as one of four owners of commercial property, was one of four lessors of that property. The husband's one-fourth interest was his sole property; the wife had no interest in the property. Both he and his wife, however, had signed the lease agreement. The Supreme Court stated the wife had no interest in the lease income. In *Raney* there was no sale of the land and there were no dower rights involved, but we do not find those facts satisfactorily distinguish it from *Ramsey,* supra, or from this case. We regard the *Ramsey* case as setting forth the established law of Arkansas, and do not consider the *Raney* decision as controlling. We hold the sale of land with payments to be made to Barrie and Mary as "seller" creates a presumption of gift of one-half of the payments from the sale to Mary.

We therefore find the "Misak Note" to be joint property, the income of which must be divided between the parties as of the date of separation.

The Chancellor determined the Heritage Shopping Center to be the sole property of Barrie. The evidence indicates Barrie owned this property prior to the parties' marriage. This property, however, was mortgaged by the couple. Mary was a co-maker of the note even though she had no ownership in the property. The monthly payments were $1,536 payable to Commercial National Mortgage Company. Barrie O'Bannon paid off this note in August, 1977 using funds obtained from the liquidation of joint assets. From September, 1977 to March, 1978, Barrie O'Bannon continued to make a ledger entry in the amount of $1,536.00 to Commercial National Mortgage Company. In fact, the check was made out to Commericial National Bank. By Barrie O'Bannon's own testimony, he travelled once a month to Little Rock from his home in Russellville to cash this check at Commercial National Bank. These checks, which were cash-

ed and the proceeds pocketed by Barrie, were drawn from an account comprised of joint funds. Nowhere in the record do we find that Mary O'Bannon received a credit for one-half of this money. Therefore, we find Mary O'Bannon should be awarded $5,476.00 which represents one-half of the checks cashed from joint assets.

The temporary order, filed August 12, 1976, required Barrie to pay $1,500.00 to Mary, such amount not to be charged against her share of the joint assets. The record reflects this was not done. Therefore, we find Barrie must pay to Mary the sum of $750.00 which represents the amount charged against her share of the joint assets.

Affirmed as modified.