DREW, J.
 

 [iRobert Duke, Sr. (“Senior”) and Dorothy Duke married on October 25, 1945, in Louisiana. Robert Duke, Jr. (“Junior”) was the only child born of the marriage. During them marriage and while domiciled in Louisiana, Senior and Dorothy acquired 380 acres of land located in Arkansas: 320 acres were acquired in 1955, and 60 acres were acquired in 1963.
 

 Dorothy Duke died intestate on May 12, 2000. Senior received the La. C.C. art. 890 legal usufruct over his late wife’s share of the community property. At the time of Dorothy’s death, $290,143.72 in community funds were held in an account at Bank of Coushatta.
 

 In a last will and testament executed on June 10, 2005, Senior named Helen Cole as his executrix and bequeathed all of his property to her. Senior married Helen Cole on June 24, 2005. Senior died on April 1, 2007.
 

 In June of 2008, Junior filed separate petitions for declaratory judgment in Senior’s succession. In the first petition, Junior alleged that he was the sole heir and administrator of Dorothy Duke’s succession. He further alleged that upon the date of his father’s remarriage, the legal usufruct terminated, and his father was required to deliver the property subject to the usufruct to him, along with legal interest on the funds from the date of termination of the usufruct.
 

 In the second petition, Junior contended that the Arkansas property was community property. He prayed that he, as Dorothy Duke’s heir, be recognized as the owner of a one-half interest in the property.
 

 The trial court did not find in Junior’s favor on his first petition. The court ruled that Junior was entitled to $145,071.86 plus the interest actually |2earned on the $145,071.86 while on deposit at the Bank of Coushatta from June 24, 2005, to July 23, 2008,
 
 [1]
 
 and then judicial interest from July 23, 2008, until paid.
 

 In a separate judgment, the court ruled in favor of Junior on the petition for declaratory judgment regarding the Arkansas property. The court classified the property as community property on the basis of La. C.C. art. 3525, and ruled that Junior was entitled to one-half of the net proceeds from the sale of the Arkansas
 
 *462
 
 property. The court denied a motion for new trial filed by Senior’s succession.
 

 Senior’s succession and Junior have appealed. Senior’s succession has filed an exception of no cause of action with this court. The succession argues that Junior was never placed in possession of Dorothy Duke’s assets, and, therefore, had no cause of action to demand the payment of money from Senior’s succession. The exception was referred to the merits of the appeal.
 

 DISCUSSION
 

 Exception of No Cause of Action
 

 A peremptory exception of no cause of action questions whether the law extends a remedy to anyone under the factual allegations of the petition.
 
 Birdsong v. Hirsch Memorial Coliseum,
 
 42,316 (La.App.2d Cir.8/22/07), 963 So.2d 1095. The exception is triable on the face of the petition, and the facts pled are to be accepted as true.
 
 Industrial Companies, Inc. v. Durbin,
 
 2002-0665 (La.1/28/03),
 
 837
 
 So.2d 1207.
 

 |3Junior alleged in the petitions that he was the administrator of his mother’s succession. The law clearly recognizes a cause of action by an administrator for the return of succession assets. La. C.C.P. art. 3211 states, “A succession representative shall be deemed to have possession of all property of the succession and shall enforce all obligations in its favor.” The exception of no cause of action filed by Senior’s succession is without merit.
 

 We note that the exception urged by Senior’s succession may actually be an exception of no right of action. Senior’s succession contended in its exception that Junior had never been placed into possession of any assets belonging to Dorothy Duke, and therefore had no cause of action to demand payment of any sums of money from Senior’s succession. No memo was submitted in support of the exception. In the original brief filed by Senior’s succession on this appeal, it is contended that until Junior is judicially recognized as Dorothy Duke’s only heir, which Senior’s succession does not dispute, he can make no demand on Senior’s succession for any payment. Thus, as the argument goes, Junior would not be entitled to any interest on the funds until he is placed into possession of an ownership interest in the funds.
 

 The exception of no right of action tests whether the plaintiff has a real and actual interest in the action.
 
 See,
 
 La. C.C.P. art. 927. The function of the exception of no right of action is to determine whether the plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the suit.
 
 Louisiana Paddlewheels v. Louisiana Riverboat Gaming Com’n,
 
 94-2015 (La.11/30/94), 646 So.2d 885. The no right of action exception assumes that the petition states a valid cause of action for some person and questions whether the plaintiff in the particular case has a legal interest in the subject matter of the litigation.
 
 Id.
 

 Senior’s succession admits in its brief that Dorothy Duke’s succession was opened on July 12, 2007, and that Junior was appointed administrator. La. C.C.P. art. 685 provides that the succession representative appointed by a court of this state is the proper plaintiff to sue to enforce a right of the deceased or of his succession, while the latter is under administration. Thus, Junior is in the class of persons to whom the law grants the cause of action asserted in the suit. If the exception of no right of action is what Senior’s succession intended to urge, it is also without merit.
 

 Dorothy Duke’s succession was apparently opened shortly after Junior filed the
 
 *463
 
 declaratory judgments. However, any objection as to lack of Junior’s procedural capacity has been waived.
 
 See,
 
 La. C.C.P. arts. 926(6) and 928.
 

 Legal Interest
 

 At the termination of a usufruct of consumables, the usufructuary is bound to deliver to the owner things of the same quantity and quality or the value they had at the commencement of the usufruct. La. C.C. art. 629. Money is a consumable. La. C.C. art. 536.
 

 Junior argues on appeal that the trial court erred in not awarding legal interest on the sums held on account from the date that the usufruct ended, ^instead of just from the date of judicial demand. In support of his argument, Junior cites La. C.C. art. 2000, which states, in part:
 

 When the object of the performance is a sum of money, damages for delay in performance are measured by the interest on that sum from the time it is due, at the rate agreed by the parties or, in the absence of agreement, at the rate of legal interest as fixed by R.S. 9:3500.
 

 Article 2000 appears in Section 4 (“Damages”) of Chapter 8 (“Effects of Conventional Obligations”) of Title IV (“Conventional Obligations or Contracts”) of Book III of the Civil Code. An obligation can arise from a contract or other declaration of will; it can also arise directly from the law. La. C.C. art. 1757. The usufruct created by juridical act is called conventional; the usufruct created by operation of law is called legal. La. C.C. art. 544. Since the art. 890 usufruct arises by operation of law, it is a legal usufruct under art. 544. Comment (b) to art. 890.
 

 There was never a contract or agreement between Junior, as heir and administrator, and Senior concerning the funds subject to the usufruct. The art. 890 usu-fruct did not create a conventional obligation between them. Therefore, relying on art. 2000 in order to determine the interest owed from the date of remarriage until the date of judicial demand would be inappropriate. The trial court properly awarded the amount of interest actually earned by the funds from the date of termination of the usufruct until the date of judicial demand.
 

 Confíict of Laws
 

 Senior’s succession appeals that part of the judgment classifying the Arkansas property as community property in accordance with Louisiana |,;law. Louisiana’s conflict of laws provisions relative to the ownership of marital property are found in La. C.C. arts. 3523 through 3527, which comprise Title III (“Marital Property”) in Book IV (“Conflict of Laws”) of the Civil Code.
 
 [2]
 

 In reaching its conclusion, the trial court applied La. C.C. art. 3525, which provides:
 

 Upon the termination of the community between spouses, either of whom is domiciled in this state, their rights and obligations with regard to immovables situated in another state acquired during marriage by either spouse while domiciled in this state, which would be community property if situated in this state, shall be determined in accordance with the law of this state. This provision may be enforced by a judgment recognizing the spouse’s right to a portion of the immovable or its value.
 

 The trial court erred in applying art. 3525. That article refers to the situation where one spouse, not both, acquired foreign property while domiciled in this state.
 
 *464
 
 If the legislature had intended to include foreign property acquired in the names of both spouses within the article’s scope, it would have used the plural “both spouses” instead of merely the singular, “either spouse.” Our interpretation of the article is supported by comment (e) to the article, which states, in part, with emphasis added: “By essentially treating the foreign immovable as if it were community property, this Article adequately protects the non-owner spouse.”
 

 This court’s interpretation is also supported by comment (a) to art. 3525, which reads, in part, with emphasis added:
 

 17Scope. This Article applies to immov-ables which: (1) are situated outside Louisiana; (2) would be classified as community property under Louisiana law
 
 {e.g.,
 
 were acquired with funds classified as community funds under Louisiana law); and (3) were acquired by a spouse (a) who, at the time of the acquisition, was domiciled in Louisiana and (b) who, at the time of the termination of the community, was domiciled in Louisiana or was subject to the jurisdiction of its courts.
 

 In an unpublished opinion,
 
 [3]
 
 the U.S. 5th Circuit concluded that art. 3525 applied only to acquisitions by either spouse, not both spouses.
 
 In re Provenza,
 
 82 Fed.Appx. 101, 2003 WL 22477888 (5th Cir. 2003),
 
 cert. denied, Provenza v. Friend,
 
 542 U.S. 919, 124 S.Ct. 2872, 159 L.Ed.2d 775 (2004). This decision was heralded as correct because the factual circumstances of the case failed to meet one of the required elements of art. 3525, an acquisition by only one spouse. Spaht and Moreno, Matrimonial Regimes §§ 4.1 and 8.11, in 16
 
 Louisiana Civil Law Treatise
 
 (3d ed.2007).
 

 Because art. 3525 does not apply, this court must look elsewhere in Title III. Comment (a) to art. 3525 states in relevant part:
 

 If any one of the above conditions [listed earlier in the comment] is missing, this Article does not apply and, depending on the circumstances, another article in this Title might be applicable. If no other article is directly applicable, the case may fall under Article 3523,
 
 supra,
 
 as the residual article of this Title, and, if that Article is not applicable, the court should resort to Article 3515,
 
 supra,
 
 the residual Article of this Book.
 

 No other article in Title III is directly applicable, nor is the residual article, art. 3523, applicable. Therefore, we resort to art. 3515, the residual article of Book IV. Article 3515 states:
 

 Except as otherwise provided in this Book, an issue in a case having contacts with other states is governed by the law of the |sstate whose policies would be most seriously impaired if its law were not applied to that issue.
 

 That state is determined by evaluating the strength and pertinence of the relevant policies of all involved states in the light of: (1) the relationship of each state to the parties and the dispute; and (2) the policies and needs of the interstate and international systems, including the policies of upholding the justified expectations of parties and of minimizing the adverse consequences that might follow from subjecting a party to the law of more than one state.
 

 The parties were married in Louisiana, and were domiciled in Louisiana at the time the Arkansas property was acquired.
 
 *465
 
 Dorothy and Senior were domiciled in Louisiana at the time of their deaths. Senior’s last will and testament was executed in Louisiana. Although Senior was in the military and moved his family to several military bases, Senior and his family returned to Louisiana when he left the service. It appears that Arkansas’s only relevant relationship to Senior and Dorothy was that the couple had purchased property there.
 

 The significance of the community property regime in this state cannot be overemphasized. “There is nothing more fundamental in our law than the rule of property which declares that this community is a partnership in which the husband and wife own equal shares, their title thereto vesting at the very instant such property is acquired.”
 
 Messersmith v. Messersmith,
 
 229 La. 495, 507, 86 So.2d 169, 173 (1956). Louisiana has an interest in maintaining the reach of the community property regime to all foreign property acquired with the community assets of couples domiciled in Louisiana.
 

 Senior’s succession points out that Arkansas is a “tenancy by the entirety” state. When a husband and wife acquire property located in | ¡Arkansas in both of their names, a presumption arises that the property is held in a tenancy by the entirety.
 
 See Ramsey v. Ramsey,
 
 259 Ark. 16, 531 S.W.2d 28 (1975). Under this doctrine, when a married couple purchase property together, a spouse’s half interest in the property is immediately transferred to the surviving spouse at the time of the first spouse’s death.
 

 Nevertheless, we note that Arkansas, in adopting the Uniform Disposition of Community Property Rights at Death Act (“Act”), AR-ST 28-12-101
 
 et seq.,
 
 has recognized the importance of protecting the interests of spouses who are domiciled in community property states. AR-ST 28-12-101(2) states that the Act applies to:
 

 All or the proportionate part of any real property situated in this state which was acquired with the rents, issues, or income of, the proceeds from, or in exchange for, property acquired as or which became, and remained, community property under the laws of another jurisdiction, or property traceable to that community property.
 

 AR-ST 28-12-102(1) provides that in determining whether the Act applies to specific property, the following rebuttable presumption applies:
 

 Property acquired during marriage by a spouse of that marriage while domiciled in a jurisdiction under whose laws property could then be acquired as community property is presumed to have been acquired as or to have become, and remained, property to which this chapter applies[.]
 

 Regarding the disposition of property upon death, the Act reads in AR-ST 28-12-103:
 

 Upon the death of a married person, one-half (½) of the property to which this chapter applies is the property of the surviving spouse and is not subject to testamentary disposition by the decedent or distribution under the laws of succession of this state. One-half (⅛) of that property is the property of the decedent and is subject to testamentary disposition or distribution under the laws of succession of this state. With | inrespect to property to which this chapter applies, the one-half (½) of the property which is the property of the decedent is not subject to the surviving spouse’s right to elect against the will and no estate of dower or curtesy exists in the property of the decedent.
 

 
 *466
 
 The trial court did not err in classifying the Arkansas property as community property under Louisiana law.
 

 CONCLUSION
 

 With each party to bear its own costs of this appeal, the judgment is AFFIRMED.
 

 [1]
 

 . This date is apparently in error as the petition for declaratory judgment relative to the interest was filed on June 23, 2008.
 

 [2]
 

 . La. C.C. art. 14 states that except as otherwise expressly provided by Louisiana law, cases having contacts with other states are governed by the law selected in accordance with the provisions of Book IV.
 

 [3]
 

 . Fifth Circuit Rule 47.5.4 provides that an unpublished opinion issued after January 1, 1996, is not precedent, but may be cited.